## No. 12,216.

E. S. OGDEN ET AL., HEIRS OF JULIA SCOTT OGDEN VS. THE LELAND UNIVERSITY.

The heirs of a deceased wife are not bound to await a liquidation of the community before resorting to a petitory action to recover their share of the community. Murphy vs. Jurey & Gillis, 9 An. 785; Tugwell vs. Tugwell, 32 An. 848; Glasscock vs. Clark, 33 An. 584.

In a petitory action brought by parties claiming to own undivided interests in an immovable against parties possessing and claiming to hold in indivision the whole immovable, defendants are entitled to plead the prescription of ten years, although an action for partition is only barred by thirty years. Under such a condition Arts. 1304 and 1305, C. C., regulating prescription and possession between co-heirs and co-owners, do not govern. LeBlanc vs. Roberson, 41 An. 1023.

A PPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*F. C. Zacharie* for Plaintiffs, Appellants.

*J. Q. A. Fellows* and *J. B. Grinage* for defendant, Appellee.

Argued and submitted November 5, 1896.
Opinion handed down November 30, 1896.
Rehearing refused January 4, 1897.

This is a petitory action brought by the heirs of Julia Scott Ogden, deceased wife of Judge Abner Nash Ogden, for the recovery of certain property in the parish of Orleans. In the brief of plaintiffs' counsel the action is referred to as follows:

" The action was first brought by only a portion of the heirs, but by supplemental petition; the others joined so that all the heirs now sue for the undivided half of the community formerly existing

between Mrs. Ogden and Judge Ogden. It embraces two squares of ground with the buildings valued at ten thousand dollars, which then stood in the village of Greenville, now a part of New Orleans. Mrs. Ogden died in 1856. Her succession was opened, but the property in question was not sold in course of administration. During the war between the States, Judge Ogden being a registered enemy, was obliged to go with his family into the Confederate lines. Shortly afterward, in 1864, these two squares of ground were sold by the sheriff under mortgage foreclosure proceedings, the court appointing a curator *ad hoc* to represent Judge A. N. Ogden. The property was bought by William T. Hepp, who resold the property to Judge A. N. Ogden on December 15, 1865. Judge Ogden, thinking he had then a valid title to the whole of the property, sold the two squares, buildings, etc., to the Leland University on April 6, 1870. This suit was instituted January 16, 1895, by plaintiffs claiming that all of these sales were absolute nullities, in so far as they, as heirs of their mother, were concerned, *quoad* her one-half of the community property in contest.

Judge Ogden died in August, 1875.

By especial agreement of counsel, all the facts alleged in the petition are admitted to be true. The answer is the plea of ten years' prescription by possession for more than that length of time under title translative of property in good faith. There being no issue of fact, the case was argued and submitted to the court *a qua*. The decision was adverse to the plaintiffs and in favor of defendants, sustaining the plea of prescription of ten years. From that decision plaintiffs have taken an appeal.

It was admitted on the trial that the mortgage debt under which the foreclosure proceedings took place was a community debt of the community between Judge Ogden and his wife.

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiffs' claims are that upon the death of Mrs. Ogden, in 1856, the ownership of one-half of the community property devolved *eo instanti* upon her heirs, subject to the payment of the community debts, and subject to the right of Judge Ogden to the usufruct during his life. That Judge Ogden and his children were therefore co-proprietors when the attempt to foreclose the Tuyes

mortgage was made; that the sale made under those proceedings, at which Hepp bought was an absolute nullity, as a curator *ad hoc* could not be appointed to represent a registered enemy; that it has been so held in Dean vs. Nelson, 10 Wallace, 172, and Lasere vs. Rochereau, 17 Wallace, 439, and that this court has since those decisions adopted that doctrine, and it now forms a part of the jurisprudence of the State. Manning's Unreported Cases, page 341, is cited in support of that assertion. Counsel concedes that under the jurisprudence existing at the date of the sale from Hepp to Judge Ogden, and of the latter to the Leland University, the title to Hepp would have been held good, but he contends that in reality the sale was an absolute nullity, that the later decisions determine absolutely that fact; that it followed, therefore, that the ownership of the heirs of the wife stood in *statu quo* unaffected by that sale; that Judge Ogden's subsequent purchase from Hepp could not, in any way, affect the status of the heirs; that through that purchase he only bought back his own half interest in the property; that even that interest was not affected by the foreclosure sale, as it was an absolute nullity, even in so far as his own half interest was concerned; that the payment by him to Hepp could not be regarded in any other light than as a payment of the mortgage debt; that the property stood thereafter just as it stood at Mrs. Ogden's death, one-half owned by Judge Ogden and one-half by her heirs, clear of mortgage; that Judge Ogden bought the property from Hepp under an error of law as to the title and the sale by him of the whole property (that is, his own one-half and the one-half of his children) was another absolute nullity based on an error of law; that as the registry laws did not require the recording of titles by descent, it was the legal duty of a party proposing to purchase property to ascertain whether the person from whom he proposed to buy was, or was not, a married man; whether the particular property had not been purchased during marriage; if so, whether or not the wife had died, an if she had died, to ascertain and know the precise steps which had been taken to divest her heirs of their interest in the community property; that not only was Hepp committed to a knowledge of all the facts of the case, but Judge Ogden, buying from Hepp, and the Leland University buying from Judge Ogden (as a purchaser under Hepp), were also committed to a knowledge of the facts connected

with Ogden's original title, and the subsequent facts bearing upon and affecting that title (citing heirs of Guillotte vs. City of Lafayette, 5 An. 388; Bennett vs. Bennett, 12 An. 254, and Williams vs. Hunter, 13 An. 477). That Hepp, Judge Ogden and the Leland University being held to a knowledge of the facts connected with the title, if they purchased the property under the erroneous belief that the foreclosure proceedings were regular and legal and divested Judge Ogden and his wife's heirs of their interest in the property and that Ogden, in purchasing, acquired from Hepp a new title to the property in its entirety and could legally convey the whole, such error in doing so was exclusively one of law, not of fact. That this error of law could not be made by them the basis of prescription of ten years, as an error of law could not be made the means for acquiring property (C. C. 1846). They contend that Hepp's title, under the foreclosure proceedings, and Ogden's title under Hepp, were not titles which the Leland University received honestly believing that Hepp and Ogden (under Hepp) were really the owners of the property for they knew or should be held to have known the facts connected with the title, and error on their part, if error there was made, was simply one of law. Counsel say that the Leland University relied upon Hepp's title to Ogden, which title was derived by him through the illegal foreclosure proceedings, and that the errors of law relative to these titles were such as defendant should not have fallen into had it made due inquiry, that it was its duty to have made proper investigation, which would have disclosed that the property was community property, and that the heirs had never been legally divested of their half interest therein (citing Heirs of Guillotte vs. City of Lafayette, 5 An. 388; Bennett vs. Bennett, 12 An. 254, and Williams vs. Hunter, 13 An. 477).

Counsel in discussing his case has overlooked the fact that the property rights of these parties, when presented to the court to be tested simply and exclusively by the direct and immediate legal results of an assumed absolute null adjudication to Hepp, followed by a sale by Hepp to Ogden, and by Ogden to the Leland University, free from any question of prescription, would be something essentially different from their presentation with the element of prescription thrown into the investigation. It might well be granted, if the adjudication to Hepp was an absolute nullity, that a sale made by him to Ogden and by the latter to the Leland University would fall

under an attack by the heirs of Mrs. Ogden through a petitory action if such an action had been brought in time for no question of prescription to arise, and yet the same result would not be led up to when the rights and obligations of parties would be complicated by a claim of ownership subsequently acquired through the ten years' prescription. A new factor, governed by special rules and leading to special legal results, would enter into and control the problem. Let it be granted that the proceedings in the foreclosure proceeding were null and void; that Hepp acquired no title, and that being the immediate and direct adjudicatee at the execution sale, he himself had no such title as would form in his favor a basis for prescription; let it also be granted that Judge Ogden, the original owner, buying from Hepp, would occupy a similar position, would it follow that a vendee from Judge Ogden would also be necessarily cut off from urging prescription? Unquestionably not. Counsel of plaintiff insists that defendant relies upon the title to Hepp, but on its own behalf defendant repudiates that idea, and says that it relies exclusively in this case upon its purchase from Judge Ogden, and the legal results flowing as to prescription from that purchase; that neither it nor the court are called upon or authorized to go back of its own purchase to investigate whether, in law, Ogden was the real legal owner of the whole property. If the defendant had made the investigation of facts which plaintiffs claim it should have made, it would have found that Ogden, at the time when he was a widower, and when his children would have no interest in property then purchased by him, had made a purchase from Hepp, claiming to be the owner. There would be no legal requirement for defendant to go into an examination of Hepp's title to see under whom or how he held, and so to trace the property back into the community between Ogden and wife. Ogden unquestionably claimed as sole owner, and so sold as holding under a party claiming sole ownership. In the absence of allegation and proof of facts showing that the Leland University did not honestly believe that Ogden was the real owner, the title it acquired was such, as under Arts. 3485 and 3486, C. C., opened the door to the running of prescription in its favor. There is nothing before us going to show that defendant did not honestly believe that it was purchasing the property from the real owner or impugning its good faith. (See on this subject Heirs of Ford vs. Mills and Phillips, 46 An. 331, and authorities cited.) But the plaintiffs say that prescrip-

tion could not begin to run until August, 1875, when Judge Ogden died, for the reason that under the law he was usufructuary during life of the property, and for the further reason that the community had not been settled. We see no reason why the existence of a usufructuary right in the father should have prevented the heirs from liquidating the community at once, and asserting, by petitory action, their rights of ownership in property illegally alienated by him. There was nothing forcing them to postpone action until the termination of the usufruct. The sale by the father to the defendant of the property was a renunciation by him of any claim of future usufruct upon the property sold.

The argument advanced by plaintiffs that they were without legal right to institute a petitory action for any specific property of the community until a liquidation of the community is inconsistent with their present attitude before the court. They assert that the community is even now unsettled, and yet they are before us as plaintiffs in petitory action. They had the same rights in 1870 in this respect as they have now.

But we are not now dealing with the question whether defendant could have successfully set up as an exception, that the heirs of the wife could not bring this action for a specific piece of community property until the community was liquidated. Defendant makes no such point. What it contends is that there was no legal obstacle in the way of plaintiffs placing themselves in position to have brought such an action by a forced liquidation of the community, immediately after the mother's death, had such a liquidation been a necessary legal condition precedent to the institution of such a suit; that the way to an action being open to them, they could not by voluntary inaction, indefinitely postpone the running of prescription in defendant's favor. (Day vs. Collins, 5 An. 589.) The legal proposition which plaintiffs contend for, that the heirs of a wife can not institute a petitory action unless and until the community between the wife and her husband has been liquidated, has been advanced a number of times before the court and passed on. The circumstances under which it has been advanced and the parties by whom it has been advanced, as affecting the decisions which have been rendered, have not been given sufficient weight to by the plaintiffs. In Heirs of Murphy vs. Jurey & Gillis, 39 An. 785, we said: "The heirs of a wife become vested with a title to her share of the

community property at the moment of her death, and though they receive it subject to the payment of the community debts, they are not bound to await a liquidation of the community before resorting to an action to recover it." Tugwell vs. Tugwell, 32 An. 848, and Glasscock vs. Clark, 33 An. 584, reaffirmed. Nor in such action, petitory in its character, is the indebtedness of the community, or its financial condition when dissolved, a legitimate subject of inquiry. Taylor Digest, p. 503, No. 5.

The plaintiffs assign as another reason why prescription should not run the argument that when Ogden (being really only the owner of an undivided half of the property) undertook to sell the whole of the same to the defendant, he conveyed validly his undivided half to it, but the other undivided half remained the property of the heirs of the wife; that the heirs of the wife and the defendant were therefore joint owners of the property, and as between joint owners the prescription of ten years would not be applicable. Citing Heirs of Murphy vs. Jurey & Gillis, 39 An. 785; Tugwell vs. Tugwell, 32 An. 848; Glasscock vs. Clark, 33 An. 584; Simon vs. Richard, 42 An. 846; 56 Texas, 356; 21 N. E. Rep. 430; 1 S. E. Rep. 625; 14 South Rep. 734: 42 N. W. Rep. 955; 22 N. E. Rep. 529; 28 N. E. Rep. 348, 627.

The decisions cited refer to a state of facts entirely different from those in the present case, and have no applicability to the question as presented to us in this proceeding. It will be time enough to discuss what prescription runs between co-proprietors after the fact of the existence of the relation of joint owners between the parties shall have been judicially determined. Defendant repudiates the idea that the plaintiffs hold the property in joint ownership with it. That issue is the very one before the court. Defendant questions plaintiff's rights to the undivided half of the property, just as he would question the right of a person claiming the property in its entirety. Defendant, in its purchase of the property, had nothing to do with the plaintiffs. Its purchase was of the entirety of the property, and it has the right to urge the prescription of ten years conformably to the title transferred to it to its full extent. This is not a suit for a partition between joint owners, but a petitory action.

In LeBlanc vs. Robertson, 41 An. 1023, this court held that in a petitory action brought by parties claiming to own undivided inter-

ests in an immovable against parties possessing and claiming to hold in indivision the whole immovable, defendants are entitled to plead the prescription of ten years, although an action for partition is only barred by thirty years; that presenting titles adverse to and exclusive of the title set up by the plaintiffs, defendants were not governed by Arts. 1304 and 1305 (Revised Civil Code) regulating prescription and possession as between co-heirs and co-owners.

For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.