Statement of the Case.
MONROE, J.
Plaintiffs allege that, as heirs of their mother, they are the owners of an undivided half interest in a tract of land, which they describe, in the parish of Avoyelles, and that in January, 1883, the defendant took, and has since that time retained, possession thereof; and they pray for judgment against him, putting them in possession, quieting their title, and condemning him to pay $2,375 as revenues for the time past, and $125 a year so long as he may hereafter continue in possession.
Defendant alleges that Charles H. George, the father of the plaintiffs, acquired the land in question by purchase from Clinton Atkinson November 11, 1879, but that the money with which he paid the price was loaned to him by Jas. F. Griffin, and that after the death of his wife he conveyed the same to Griffin in payment of the loan; that defendant bought said land from Griffin in January, 18S4, and has been in undisturbed possession ever since; and he pleads the prescription of 10 years, acquirendi causa. He further alleges that he acquired in good faith, by a title translative of property, and that, in the event of his eviction, he should recover $150 paid for the property, $200 expended in improvements, $400 representing increase in value, and $275 in reimbursement of taxes paid.
He further pleads that the plaintiffs are es-topped by reason of the fact that a portion of the consideration of the sale to Griffin was paid to the administrator of their father and inured to their benefit.
It appears from the record that upon November 11, 1879, Charles I-I. George, the father of the plaintiffs, who was then living with his wife under the régime of the community, and John W. Bell, purchased from Clinton Atkinson, represented by Jas. F. Griffin, two tracts of land, of 120 acres each, for $1,000, of which $150 was paid in cash, and for the balance the purchasers gave their three notes—one, for $183.33, payable February 1, 1880; another, for $333.33, payable January 1, 1881; and the third, for $333.33, payable January 1, 1882; all secured by mortgage on the property purchased.
In January, 1881, George and Bell effected a partition of one of the tracts thus acquired by them, and described as “bounded, on the South by Bayou des Glaises; North, by public land; East, by lands belonging to William O. Rusk; and West, by land belonging to Valerian Desselles, containing 120 acres, said tract lying and being on the left, descending, bank of Bayou des Glaises.” The act of partition recites that “the said John W. Bell takes, for his share * * *, the West half of the above described property and the said Charles George takes * * * the East half.”
In March, 1881, Mrs. George died, leaving, as surviving issue of her marriage, the plaintiff Mrs. Seward, then about six years old, and Ira N. George, her brother and coplaintiff, who was four years younger. Mrs. George’s succession was not opened, and the father of the minors did not take out letters of tutorship. Upon December 1, 1882, he sold to Jas. F. Griffin the 60-acre tract which he had acquired in the partition with Bell, and also his undivided half interest in the other tract, which he and Bell had bought from Atkinson, and which remained undivided. The act recites that the consideration of the sale is $500, of which $250 is paid in cash, and for the balance the purchaser gives two notes, of $125 each, bearing interest at 8 per cent, from date, maturing-in the months of January, 1884 and 1885, respectively, and secured by mortgage, etc. In 1883 Charles George died, and his succession was opened on the petition of his brother Hilary, who was appointed administrator, and caused an inventory to be made, in which the two notes last mentioned were appraised at $100 and $90, respectively, and which includes some other movables, the whole aggregating $400. 'The minors were then removed by their uncle to the parish of St. Helena, and lived at his house for about a year, when they were taken to the home of their grandparents, in the same parish, where they thereafter resided—the girl until 1895, and the boy for a few years longer, when he enlisted in the army and went to the Philip *763 pines. The administrator testifies that the Griffin notes were collected; that in December, 1885, from the collection so made, he paid to his father, for the use of the minors, $120, and in January, 1890, paid him the further sum of $100; that in January, 1902, he gave to the plaintiff Loula B. • George, now wife of O. B. Seward, $20 (though it does not appear he told her where it came from); and that he still holds $20 for the boy. He, however, produces no receipts for these payments, and from other evidence it appears that on the note due January 1, 1884, $50 was paid on account January 12, 18S5, and that the balance, in full, was paid September 28, 1885, at which date, also, the note due January 1, 1885, was paid in full. As the notes bore interest at the rate of 8 per cent, per annum from date, the total amount collected should have been $323. Deducting from this the sum of $260, the total of the credits claimed by the administrator, including the $20 held for the boy, and he ought still to have in his hands a balance from these collections of $63; and, according to his own testimony, there ought to be a small balance from other assets. The administrator further testifies that the grandparents of the minors were poor, whilst from other testimony it appears that he is well off. He does not explain, however, why, of the money thus collected in 1885, and prior to that time, he had, up to January, 1890, turned over to the grandparents of the minors only $120, or why, after a lapse of 20 years, he still holds the balances mentioned. From the testimony of Griffin, it seems not unlikely that he loaned George part of the money needed by the latter to pay his proportion of the price of the property acquired by him and Bell from Atkinson. But his testimony is not altogether satisfactory. I-Ie seems to say at one time that he advanced the whole amount, and, upon the basis of that testimony, defendant’s counsel says in his brief, “Prom this evidence it is indisputable, therefore, that, as George had never paid anything for the property prior to his wife’s death, and transferred it to Griffin after her death, no community funds ever formed any part of the purchase price.’’ The fact is that, in the purchase from Atkinson, George’s proportion of the cash payment was $75, and of the credit portion of the price, $425, and that, in the purchase from George by Griffin, the cash payment is said in the act-of sale to have been $250, and for the balance, of $250, Griffin gave his notes, and afterwards paid them, which he would hardly have done if George had owed him the whole amount of the purchase price, or if he had loaned George the whole amount necessary to make all of the deferred payments due to Atkinson, as he elsewhere in the testimony states that he did; there being-some conflict in that respect between the position taken by the defendant’s counsel and the testimony of the witness.
The defendant testifies that when he bought he was not aware that the plaintiffs had any interest in the 'property. There are two witnesses who testify, and he admits that he was told that such was the case; but the witnesses are unable to state positively that the information was given to him before he purchased, and he states that it was several years afterward. It is shown that the defendant cleared 10 acres of the land, and that the value of that improvement was $10 an acre. It is not shown that he made any other improvement for which he would be entitled to recover in any aspect of the case. From the receipt of the tax collector, it appears that from 1884 to 1902 he paid $91.93 in the way of taxes upon 120 acres of land, which, though the description does not tally very well, it seems to be conceded, include the tract here in controversy. The rental value of the 26 acres of cleared land in the tract in dispute is shown to be not less than $5 per acre.
Opinion.
It is clear that the property acquired by George from Atkinson, and in the partition with Bell, belonged to the then existing community between George and his wife; that upon the death of the wife the title to an undivided half interest therein vested in the plaintiffs, as her heirs, burdened with liability for one-half of the debts of the community; and hence that the sale made by George after the death of his wife, though purporting to convey the whole property, in reality conveyed only George’s undivided half interest, and made his vendee, Griffin, owner in indivisión with the plaintiffs. Bennett v. Fuller, 29 La. Ann. 663; Tugwell v. Tug- *765 well, 32 La. Ann. 848; Glasscock et al. v. Clark, 33 La. Ann. 584; Ogden et al. v. University, 49 La. Ann. 191, 21 South. 685. It is equally clear that the plaintiffs are not estopped to recover by reason of the fact that the administrator of their father’s succession received the proceeds of the notes given by Griffin in part payment of the purchase price of the property, or by his testimony to the effect that he turned part of it over to their grandfather, with whom they were living, for their use, or by the fact that he paid $20 of said proceeds to Mrs. Seward in 1902, after her majority. Neither the administrator nor the grandfather were authorized to represent the minors or to receive money for their account, and the evidence fails to show that any money received by either of them inured to the benefit of the minors. Nor does it appear that Mrs. Seward knew or was informed that the $20 given to her by the administrator in 1902 were part of the proceeds derived from the sale of this property, which proceeds had come into his hands 17 years before, or, as a matter of fact, that they were part of such proceeds. Wood v. Nicholls, 33 La. Ann. 744.
It is also clear that the plea of prescription is not well founded, since the elder of the plaintiffs attained her majority only in 1896, and this action was brought in 1902; and the prescription, acquirendi causa, does not run against minors. Civ. Code, art. 3522; Barrow v. Wilson, 38 La. Ann. 209; Messick v. Mayer, 52 La. Ann. 1161, 27 South. 815. The learned judge a quo appears to have been of the opinion that the defendant’s possession, at least, commenced in good faith; and, as he was in a better position than we are to determine the question, which is mainly one of fact, we accept his conclusion. That being the case, the plaintiffs are entitled to recover rent from the cleared land (26 acres, in which they are interested to the extent of one-halfi at the rate of $5 an acre per annum, beginning with the year 1902; and the defendant is entitled to recover, in reconvention, one-half the cost of clearing 10 acres, at $10 an acre, and $22.98 in reimbursement of taxes paid.
The plaintiffs, as heirs of their mother, were not bound to await the liquidation of the community to bring this action, but are entitled to recover the property sued for, subject to the payment of the community debts. Ogden et al. v. University, 49 La. Ann. 196, 21 South. 685. “Nor, in such action, petitory in character, is the indebtedness of the community, or its financial condition when dissolved, a legitimate subject of inquiry.” Heirs of Murphy v. Jurey & Gillis, 39 La. Ann. 785, 2 South. 575.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be-amended by striking therefrom the item of $125 allowed to the defendant upon his demand in reconvention, as “the amount due- and owing on the property herein recovered,, and paid by defendant,” and, as amended,, that said judgment be affirmed; the defendant and appellant to pay all costs.