Statement of the Case.
NICHOLLS, J.
Edward Conery, Sr., died in New Orleans on the 2d day of February, 1897. His wife died before him.
He left as heirs Edward Conery, Jr. (who, on May 20, 1901, was interdicted), and five grandchildren, issue of the marriage of a predeceased daughter, Ellen Conery, who had married William H. Byrnes. These children were Edward Conery Byrnes, a major, Ellen Mary Byrnes and Anna M. Byrnes (majors and unmarried), and Marie Byrnes and William H. Byrnes, Jr. (minors). The *152 deceased having died intestate, his estate vested in the proportion of five-tenths to Edward Conery, Jr., and five-tenths to the children of Ellen Conery.
The succession was opened on the 9th of February, 1897, in the civil district court for the parish of Orleans, and allotted to division A. William H. Byrnes on that day applied to be appointed administrator of the succession, and in due course he was so appointed.
On the 13th day of April, 1901, Edward Conery Byrnes filed in that court a petition against his coheirs for a partition of the succession. The proceeding was allotted to division C of the court. In his petition in that suit the plaintiff alleged that the bulk of the estate consisted of real estate in New Orleans, that it could not be conveniently or properly divided in kind, and asked for the appointment of experts, and for sale by licitation. He was asked for the appointment of special tutors ad hoc to the minors, and an order was rendered accordingly. This citation was served upon Edward J. Conery, curator of the interdict Edward Conery, Jr., and upon the special tutors appointed.
On the 16th and 29th days of July, 1901, the several parties defendant appeared (the minors and interdict by their curators and the other parties by their attorneys), and filed general denials to the petition.
On the 30th day of July, the experts reported, and this report, recommending the sale of the property to effect the partition, was presented to the court and filed. On August 3d proof of heirship in the shape of affidavits was filed, and on August 5th a written submission by all parties to the cause was also filed. On the same day judgment was rendered and signed, recognizing the parties aforesaid, as heirs of Edward Conery, Sr., ordering the property to be sold and fixing the terms of sale. On August 23, 1901, Mrs. Mary H. Conery, the wife of Edward Conery, Jr., filed her petition to annul the judgment of August 5, 1901, because:
(1) E. J. Conery, curator of the interdict, had not been legally appointed by reason of the fact that one of the members of the family meeting recommending his appointment was a minor.
(2) Because the curator, if legally appointed, was incompetent to submit the suit for partition and to consent to the rendition of the judgment in vacation.
(3) Because ,a judgment in a partition proceeding against the minors and the interdict, ordering the sale of property, could only have been rendered after the calling of a family meeting to fix the terms and conditions. This petition also prayed for an injunction against the sale advertised for September 10, 1901, which was granted. To this petition various exceptions were filed. On November 27, 1901, E. J. Conery, curator of the interdict, filed himself a petition to annul the judgment of August 5, 1901, on the ground that at the time that the interdict Edward Conery, Jr., was cited through petitioner he (petitioner) was not qualified to act. On November 29th Edward Conery Byrnes and the other parties filed their answers, admitting the nullity of the judgment. On December 4, 1901, Edward Conery Byrnes presented his petition to the court, stating the emancipation of the minors Márie Byrnes and William H. Byrnes, Jr., and praying that they might be made parties, and further praying for citation of Edward Conery, Ji\, through E. J. Conery, curator, who in the meantime had been reappointed and had qualified as curator.
On December 5th the court, considering the answers of the various parties to the suit, rendered judgment annulling the judgment of partition rendered on August 5, 1901. As a result of that judgment the injunction which had been granted fell, and the proceeding instituted by Mrs. Conery figured no longer in the case.
*153 On December 24, 1901, the court rendered judgment recognizing the .heirs as the sole heirs at law of Edward Oonery, Sr., fixing the proportions of their interest, and ordering a partition by licitation “upon such terms and conditions as may be fixed by a duly convened family meeting in behalf of the said interdict with respect to his said share, and upon such further terms and conditions as may be agreed upon by the major owners: with respect to their said shares.” It was; further ordered that thereafter all parties in interest be referred to James J. Woulfe for the completion of the partition. This' judgment was signed on' January 7, 1902. On January 4, 1902, Edward J. Oonery, curator, filed his petition, in which he represented that the said judgment of partition had. been rendered decreeing the partition by lici-' tation of the effects of the succession and asking that a family meeting be convened before H. Generes Dufour, notary public, for the purpose of deliberating upon the terms and conditions of the sale in the interest of the interdict, and in order to carry out the provisions of the judgment.
On January 15,1902, a family meeting was convened before H. Generes Dufour, notary public, in accordance with the prayer of the curator, Edward J. Oonery, and of the terms of the judgment. The family meeting so held was constituted of Robert H. Bartley, Sr., Robert Bartley, George Bartley, James David Coleman, and Joseph O. Oonery, who are recited to have all personally appeared, to have been of full age, and residing in the parish, as designated by the order of court, and as duly summoned by the notary, according to law, to attend the meeting. The undercurator of the interdict, William P. Oonery, was also recited to be present, and all parties signed the procSs verbal.
On January 17, 1902, Edward J. Oonery, as curator, filed his petition, in which he stated that:
“Pursuant to an order of this honorable court a family meeting was held before H. Generes Dufour on the 15th day of January, 1902, fixing the terms and conditions of the interest of the interdict in the succession of Edward Oonery, Sr., and his predeceased wife, in accordance with the judgment of partition rendered in the said succession, and duly certified copy of the procSs verbal of the said family meeting is annexed hereto, and made part hereof, and petitioner desires to have same homologated, and made part of the proceedings.”
He prayed that the deliberations of the family meeting be received and homologated, and an order was accordingly entered to that effect. On February 3, 1902, a petition was filed by Edward Oonery Byrnes for a new inventory and appraisement. This inventory was made, and on the 20th day of February was filed. It was subsequently, on the 20th day of July, 1902, homologated. On the 25th day of February, 1902, the property was sold. On December 8, 1903, the notary appointed to effect the partition filed his petition in court, presenting his projet of partition, and stating that Edward J. Oonery, curator, although duly notified, had failed to appear; that he had refused to sign the partition; that the parties could not agree; and submitting the matter to the judgment of the court.
On the same day Edward Oonery Byrnes and the other parties to the suit filed their petition against the interdict, through his curator, to compel his acceptance of and signature to the proposed partition. On January 5, 1903, Edward J. Oonery, as curator, and the wife and children of Edward Oonery, Jr., joining as eoplaintiffs, filed their petition to annul the judgment of January 7, 1902, on the following grounds:
(1) Because the said succession was still under administration in division A of the civil district court.
(2) Because the division O, in which the partition proceedings had been conducted, was without jurisdiction ratione materias.
(3) Because an alleged order sending the *154 heirs into possession was void for want of citation of the administrator of the succession.
(4) Because there were debts still due by the succession.
(5) Because only division A of the civil district court, in which the administration was pending, had jurisdiction to send the heirs into possession.
To this petition the other parties excepted:
(1) That the same disclosed no cause of action.
(2) That the interdict was estopped.
(3) That the proper remedy was by appeal, and not by action of nullity.
(4) That the suit was brought in the name of the curator by the attorneys who signed the petition without any authority from, and against the protest of the curator.
On March 24, 1903, these exceptions were sustained, and the suit dismissed. The plaintiffs thereupon appealed to this court, and a motion was m'ade to dismiss the appeal. On June 22, 1903, this motion was sustained (111 La. 403, 35 South. 617) on the ground that the wife and children had no standing to bring the suit, and because it appeared that the suit was brought by counsel without authority.
In the meantime Edward J. Conery was removed as curator, and Joseph O. Oonery was appointed in his place. On March 10,1904, the new curator, Joseph C. Conery, filed a petition to annul the judgment of January 7, 1902.
In this petition he alleged that Edward Conery, Jr., the interdict, was a forced heir of the late Edward Conery, Sr., and of Ann Caffery, wife of Edward Conery, Sr.; that Edward Conery, Sr., departed this life on the 2d of Eebruary, 1897, and, as averred in the petition filed upon the opening of his succession, died intestate; that his succession was duly opened in the civil district court on the probate side thereof, and the said succession, under the Constitution and laws of the state of Louisiana, was duly and regularly allotted to division A of said civil district court.
That upon the application of Win. Byrnes appearing upon behalf of the issue of his marriage with Ellen Conery (the said Ellen Conery being a forced heir of Edward Conery, Sr.), representing the necessity for an administration of said estate, and asking to be appointed as administrator thereof, the saidWm. S. Byrnes in due course of procedure (the regularity of which is not admitted by any recitals herein) was appointed administrator of the succession of Edward Conery, Sr., and letters of administration were duly issued; that an inventory of the effects and estate of said Edward Conery, Sr., and of Ann Caffery, his wife, was ordered, and such property as stood upon the public records as the property of the decedents and such personal property as was indicated by said Wm. H. Byrnes were listed as constituting the effects of said estate by this declaration. Your petitioner disclaims that he admits that the said inventory embraced all of the property of said estate, or that all of its effects have been duly inventoried and accounted for.
That the succession of Edward Conery, Sr., and of Ann Caffery, his wife, has been, since the opening thereof, to wit, on Eebruary 9, 1897, and is now, pending and undetermined in division A of this honorable court; that there are debts and obligations of the said Edward Conery, Sr., and of his wife, Ann Caffery, that have not been paid, and there are assets due' said estate which have not been accounted for; and the administration of said estates pending in division A of this honorable court is still undetermined and unsettled.
That William H. Byrnes, as administrator of the succession of Edward Conery, Sr. (in whose succession there is under administration the community property existing between said Edward Conery, Sr., and his wife. Ann Caffery), as tutor of his minor chil *155 dren, as the representative of his children who have attained majority, and as a syndic of Edward Conery, Jr. (who had, prior to his, interdiction, taken advantage of the insolvent laws of the state), came (through his children) practically into the physical possession and control of the entire estate and fortune of Edward Conery, Sr., of Ann Caffery, his wife, of Edward Conery, Jr., the interdict, and of Ellen Conery, the wife of William H. Byrnes;. that the practical effect of the administration of Byrnes of the various estates hereinbefore enumerated (if ultimately sustained and approved) will be to place his children in possession of all the estates hereinabove recited, including that of the interdict; that said Byrnes has so attempted to manage and arrange the affairs of the said succession of Edward Conery, Sr., as well as the property held by him under administration as syndic of the insolvent, Edward Conery, Jr., the interdict, that the real estate of said succession has been sacrificed and purchased by said Byrnes and his children, who now, on the public records, pretend to own the entire estates hereinbefore enumerated, which estates consist of the property described in Exhibits A and B, hereto annexed and made part hereof; that the property described lastly in Exhibit B was exposed for sale under foreclosure of a mortgage executed by said Edward Conery, Jr., and held by the late Hibernia National Bank of New Orleans, La.
That in order more effectually to carry out and execute his purposes the said William H. Byrnes (taking advantage and under cover of his official positions as administrator of the succession of Edward Conery, Sr., and Ann Caffery, his wife, as syndic of Edward Conery, Jr., and as tutor and agent of his children aforesaid), with a view and intention to the injury, prejudice, and wrong of Edward Conery, Jr., the interdict, to secure possession and control of the assets hereinbefore enumerated, directed the proceedings which- are hereinafter complained of, and indicated to and directed the late curator of the interdict the counsel whom he should employ, and whom, as a matter of fact, the said late curator did employ, to represent the interests of said interdict; that the said counsel, believing at the time of such employment that the intention and purpose of the said William H. Byrnes was to protect the estate and do full justice to the interests which he represented, and to the interdict, Edward Conery, Jr., and believing in the representations and honesty of purpose of said William H. Byrnes, yielded submission to the proceedings had without questioning the reason or motive, and relying upon the assurance given him; that in furtherance of the designs conceived in his personal interest, and to the detriment of the estates enumerated, the said William H. Byrnes suggested and instituted the proceedings instituted and prosecuted before division C of this honorable court, and (which proceedings are hereinafter specially complained of) that while the succession of Edward Conery, Sr., was under process of administration by division' A of this honorable court (which had exclusive jurisdiction of said succession and all proceedings to be had therein from its inception to its. final determination), the said William H. Byrnes inspired and instigated Edward Conery Byrnes, his son, to institute and prosecute an independent suit in division C of this honorable court, as the heir of his maternal grandfather, Edward Conery, Sr., to have himself, in common with his brothers and sisters (some of whom were then minors) and Edward Conery, Jr., his maternal uncle, recognized as the sole heirs at law of their deceased parents and grandparents, and as owners of the property left by them, in the proportions as set forth in the petition of Edward Conery Byrnes; that the said petition prayed for an inventory of the estate of which they sought to be recognized *156 as owners, and for a partition by li citation (if the property was not susceptible of division in kind), upon such terms and conditions as the family meeting to be convened on bghalf of said minors and the interdict should determine, and for “the completion of said partition and for the adjustment of the respective interests' of the parties,” with reference to the estate of Edward Conery, Sr., and Ann Oaffery, his wife, that said proceeding was an independent proceeding, docketed under the number 64,72&, entitled “Edward C. Byrnes vs. The Minors Byrnes,” and allotted under the Constitution and laws of Louisiana to division C of this honorable court.
That upon the ex parte representations and showing to the Honorable John St. Paul, presiding in said division of the civil district court, a pretended judgment was entered, sending the alleged heirs of Edward Conery, Sr., and Ann Oaffery, his wife, into possession of said estates, then actually in the custody and subject to the exclusive jurisdiction, direction, and control and held under administration by division A of said civil district court; that upon the basis of their recognitions as heirs to the estate of Edward Conery, Sr., aforesaid, an inventory of the estate was ordered, and the property appraised at a sum largely below its real value, and as your petitioners believe and aver, and so charge, the said appraisement was in a measure influenced by the representations of said Wm. H. Byrnes, and the earning capacity of said property, with the view and purpose upon the part of said Byrnes to acquire the same at an inadequate price, thus operating prejudicially to the estates which he had under administration, and which he controlled, and which was done by said W. H. Byrnes, as your petitioner avers, in his own interest, and for his own personal advantage, although on the face of the record apparently for the benefit of his children, whom he represents.
That upon the report of experts that the property could not conveniently be divided in kind without the cantling of tenements, there was a pretended decree ordering a partition by licitation, and this court, under the alleged decree, entered herein on January 7, 1002 (and of which pretended judgment this proceeding complains), ordered J. C. Denis to expose for sale at public auction all the real estate inventoried in the succession of E. Conery, Sr., sought to be partitioned in this proceeding, thus illegally divesting division A of the civil district court of its jurisdiction of the property held by it under administration in the succession of Edward Conery, Sr., and Ann Oaffery, his wife; that under the pretended decree aforesaid there was a pretended sale of the property enumerated in Exhibit A, attached to this petition, and by the pretended sale thus effected by J. C. Denis, auctioneer, as aforesaid, the entire property of Edward Conery, Sr., inventoried in his estate and of Ann Caffery was purchased by the heirs of Ellen Conery Byrnes; that they continue to stand on the records as owners of said property, and that they have, as petitioners are informed and believe, and so charge, in no manner incumbered the same, or parted with their pretended title thereto.
That under an order of court entered in this cause reference was made to James J. Woulfe, the notary in charge, to partition the effects of said estate, and to report his acts in the premises to this court for further consideration and ultimate decision; that there were large collations due the estate of Edward Conery, Sr., from the estate of Ellen Conery Byrnes, the wife of Wm. H. Byrnes," as well as from Edward Conery, Jr., the interdict; that said James J. Woulfe having the matter in charge, being unable to effect a partition of the proceeds pretended to have been realized from the sale of said estates, and to ascertain and determine for ultimate decision, the amount of *157 collation due, respectively, by the heirs, and the amounts due to the respective heirs, referred the projet of his labors to this court for consideration and decision, where it is now pending.
Petitioner respectfully represents that the judgment of this honorable court of January 7, 1902, recognizing in its decree the alleged heirs of Edward Conery, Sr., and directing and decreeing the partition of the estates of Edward Conery, Sr., and Ann Caffery, his wife, is void, for this, to wit:
First. That the succession of Edward Conery, Sr., and Ann Caffery, his wife, was under administration in division A of the civil district court, and was there pending undetermined and unsettled; that said division A of said civil district court had under the laws and Constitution of the state of Louisiana in such cases made and provided exclusive jurisdiction of said succession and the property belonging thereto, from the inception of said cause to its final determination.
Second. That this honorable court was without jurisdiction ratione materim in this cause to enter an order affecting the estates of Edward Conery, Sr., or Ann Caffery, his wife, whose estates constitute their succession, then in course of administration, the corpus of the estates being held under the exclusive control, and therefore subject to the orders, of division A of the civil district court.
Third. That the proceedings attempting to send the heirs into possession is void for want of citation upon the administrator of the succession, a necessary party to said proceeding, without whose presence actively or passively appearing by the record no decree could be entered divesting him of his control of the property as an officer of division A of the district court, for which he held the property of said succession under administration.
Fourth. That said judgment is void because there were debts due by said succession, as appears by the record, and there could be no partition of the effects of the-deceased where the estate was under administration until the debts were paid, or until the heirs accepted the succession purely and unconditionally in the court charged with exclusive jurisdiction of said succession.
Fifth. That the only court competent to-accord recognition to the minors, and send them into possession of the property under administration, is the court primarily charged with jurisdiction of the succession, and its jurisdiction is controlling and exclusive of all other jurisdictions, according recognition to the heirs, or sending them, when recognized, into possession, and for partitioning the effects of the succession, and any attempted or assertéd exercise of authority for that purpose by any other jurisdiction is void, and without force or effect.
That, as already indicated in the recitals hereinbefore made, the entire estates of Edward Conery, Sr., of Ann Caffery, his wife, of Edward Conery, Jr., the interdict, and of Ellen Conery Byrne's, although subject to collation to the estate of her father, Edward Conery, Sr., have been absorbed and are controlled by the Byrnes heirs, to the great wrong, prejudice, and injury of the interdict and petitioners, and that aside from the absolute nullity of the proceeding had in this honorable court in the attempted partition of the estate of Edward Conery, Sr., and Ann Caffery, his wife, the said Wm. H. Byrnes, acting nominally in the interests of his children, but, as petitioners believe, aver, and so charge, in his own interests, has collected large revenues from the property so temporarily under his control and administration, and has entailed upon petitioners injury and loss in excess of $100,000, for which they reserve their right to proceed against William H. Byrnes individually, and those aiding, assisting, and confederating with him; that the proceedings herein complained of, and more particularly and especially the proceedings had in the suit pending in *158 this division of court, entitled “Edward C. Byrnes vs. The Minors Byrnes et als.,” 64,-729, and particularly the judgment rendered on December 24, 1901, and signed on January 7, 1902, according recognition to the parties alleging themselves to be heirs of the estate, and sending them into possession, and the decree of partition rendered thereon, and having said judgment for its basis, and the sales thereunder, and all proceedings subsequent to said judgment of whatever nature or kind, should be decreed void, and of no force, value, or effect, because, as already averred, of want of jurisdiction in this court ratione materise to entertain said proceedings, the effect of which was to divest division A of its jurisdiction, or to accord recognition to heirs in estates pending in other courts for administration, and in ordering the partition of the same.
The prayer of the petition was that all of the children of Ellen Conery (issue of her marriage with W. H. Byrnes) be cited; that there be judgment in favor of the plaintiff, the curator of E. Conery, Jr., adjudging and decreeing the judgment rendered in this division of this honorable court on December 24,1901, and signed on January 7, 1902, to be void, and to be esteemed of no force, value, or effect, the court being without jurisdiction ratione materise to entertain said proceeding or to render said judgment; that it be further decreed that in consequence of the declaration and decree by this court of the absolute nullity of the judgment herein complained of, all proceedings had. subsequent to the rendition of said judgment and in execution thereof, or any proceedings in said cause affecting the title to the estate of Edward Conery, Sr., or Ann Caffery, his wife, be decreed null and void, and of no force or effect.
That it be further decreed that said property is still subject to the administration of the succession of Edward Conery, Sr., and Ann Caffery, his wife, and that division A of this honorable court, charged with the jurisdiction of jhe said succession, has exclusive control of all proceedings in said succession until its final determination.
That all costs incurred in this proceeding be paid by the said Edward Conery Byrnes, as well as the costs of this suit, and that the plaintiffs herein cited under the court’s order to answer the projet of partition submitted by Jas. J. Woulfe, notary public, to whom said proceedings were referred, be relieved from making or interposing any defense, whether by exception or answer, until the determination of the present action to annul the judgment herein complained of; that said proceedings be stayed until further orders of this honorable court; and petitioner finally prays for costs, and for full, general, and equitable relief.
This petition was met with, various exceptions; amongst others:
(1) No cause of action.
(2) Prescription of one year.
(3) Estoppel of curator by his predecessor having participated in the proceedings resulting in the judgment of January 7, 1902.
These exceptions were referred to the merits, and on May 10th an answer was filed, in which they were substantially reiterated. On April 15, 1904, a further peremptory exception was filed by the defendants as follows:
“That the plaintiff, as such curator, cannot institute and maintain its action to annul the judgment of this division of the court rendered on December 24, 1901, and signed on January 7, 1902, for want of jurisdiction in' this division of the court to render the same, for inasmuch as his predecessor in office, Edward J. Conery, duly appointed curator of the interdict Edward Conery, Jr., appeared in, answered, and participated in the proceedings resulting in said judgment, and thereby, in behalf of the interdict, acquiesced in and consented to the jurisdiction of this division of the court, and the curator of said interdict cannot now be heard to contest the jurisdiction of this division of the court.”
On May 25, 1904, Joseph C. Conery, curator, filed his supplemental and amended pe *159 tition. In this he set up as further ground of nullity that he was a minor at the time he participated in the family meeting of January 15, 1902.
To this supplemental and amended petition the defendants filed a general denial.
On these issues the case went to trial.
The district judge rendered judgment dismissing- the suit, and filed written reasons in support of the same.
Opinion.
The main reliance of the appellant is that division 0 of the civil district court was without right, power, or authority to take cognizance as it did of any of the proceedings taken looking to the partition of the succession of Edward Conery and his wife. Ann Caffery, or to give any orders whatever therein, for the reason that at the time when those proceedings were instituted those successions had been allotted to division A of that court, and were still pending therein undetermined and unsettled; that, therefore, under article 134 of the Constitution of 1898, that division of the court had exclusive jurisdiction of the successions, of the property belonging to them, and of all questions and proceedings arising in relation thereto from the inception or the opening of the successions until they should be finally closed; that the partition proceedings should not have been allotted to division C (as they were) as an independent suit or proceeding, but should have been at once referred by the clerk to division A as part and parcel of the succession proceedings, as all the questions raised therein had to be passed upon by the judge of division A, and not the judge of division C.
It is not pretended that the partition proceedings were not before the proper court, but it is maintained that they were illegally in the wrong division of the court. This court has on a number of occasions held that, though there were several divisions of the civil district court, there was but one civil district court. State ex rel. Du Barry v. Judges Civil District Court, 52 La. Ann. 1255, 27 South. 1031.
The general rule established by article 134 of the Constitution is that all cases, after having been filed, shall be allotted or assigned among the different judges thereof. The article specified certain proceedings as exceptions to this general rule of allotment, stating that these particularly named proceedings “need not be” allotted or specially allotted or assigned, but should be controlled by law or by rules to be adopted by the court. The fact that the district judge to whom this particular case was allotted overruled the exception taken to his action in this matter goes far to show that there was no violation of the rules of the civil district court. It must be presumed, so far as the situation was affected by rules of court, that they were complied with. State v. Arbuno, 105 La. 719, 30 South. 163.
If true it was that the partition proceeding should have been properly referred by the clerk of his own action to division A, his action in allotting it to division O. was subject to correction by the parties concerned. His action was not an absolute nullity. In this case there was objection from no quarter, and the case went to trial and judgment by acquiescence and consent of all parties. We are referred by counsel of appellee to numerous decisions of the court in respect to the article of the Constitution mentioned. State ex rel. Buisson v. Lazarus, 33 La. Ann. 1425; Pironi v. Riley, 39 La. Ann. 302, 1 South. 675; State ex rel. Improvement Co. v. Judge, 41 La. Ann. 567, 6 South. 826; Johnson v. Barkley, 47 La. Ann. 98, 16 South. 659; Block & Sons v. Marks, 47 La. Ann. 109, 16 South. 649. To these may be added James v. Meyer, 43 La. Ann. 38, 8 South. 575; Labouisse v. Cotton Rope Co., 43 La. Ann. 584, 9 South. 492; State ex rel. Marchand v. Judge, 44 La. Ann. 190, 10 South. 768; State *160 ex rel. Du Barry v. Judges, 52 La. Ann. 1255, 27 South. 1031; and State v. Arbuno, 105 La. 725, 30 South. 163, and authorities cited.
In the case of Johnson v. Barkley, 47 La. Ann. 98,16 South. 659 (which was a partition suit), among the objections urged by the purchaser to taking title was one that the succession of Johnson opened in division B was not closed at the time the suit for partition was filed, and, as the heirs were not placed in possession until 1894, the particular suit should have been filed in division B, and the allotment to division B was erroneous, and the judge of that division had no jurisdiction or power to render the decree of partition, This court (referring to that objection) said:
“If the suit should have been brought before Division B, the error was cured. The heirs were cited before division E of the court, having jurisdiction. Those not cited were plaintiffs. They raised no objections to the allotment made to division E.
“Judgment was pronounced in these partition proceedings, and the property was sold. It is too late to raise objections on appeal to a decree because the judge of one of the divisions rendered the decree after an allotment alleged erroneous.”
In State v. Arbuno, 105 La. 726, 30 South. 163, we referred to a number of' our own cases showing that the failure to object to an allotment (which, if objected to, might have been changed) had the effect of curing the allotment and of waiving any objections to the same; particularly citing State v. Williams, 34 La. Ann. 1200, State ex rel. Buisson v. Lazarus, 33 La. Ann. 1425, and Pironi v. Riley, 39 La. Ann. 305, 1 South. 675. It is obvious that such objection does not raise a question of “jurisdiction” in the ordinary sense, for, were it to do so, consent or acquiescence would not waive it. In this case there was not silence or mere acquiescence, but actual affirmative action in aid of the proceedings by E. J. Oonery, the curator of the interdict and the other defendants.
Appellant, however, contends that the connection between the administration of a succession and questions arising in respect to the partition of the property belonging to it is so close that it cannot be legally broken; that the administration of a succession is indivisible, and it necessarily continues under administration and in the hands of its administrator until finally closed.
An administrator is frequently referred to as the representative of both the creditors and the heirs, but it is only as he may act as the trustee of creditors, and where their rights come in conflict with those of the heirs and to the extent of that conflict that the administrator holds possession of the succession adversely to the heirs. Unless there be creditors whose interests it is his duty to protect, the possession of the administrator is ancillary to and in aid of the rights of the heirs. He cannot hold possession of the succession property (where the heirs elect to take it from him) if there be no creditors. He has no concern in the relations of the heirs inter se. That is a matter which in no manner interests him legally. The settlement of a succession is to be viewed from two standpoints: First, for the payment of the debts of the succession; second, for the settlement inter se of the rights of the heirs. In order that an administrator should be appointed to a succession, it is not essentially necessary that it 'should owe debts. Its condition and situation may be such as to make it (by admission and consent of all parties) proper for general convenience as well as interest that the collection of outstanding claims and other special matters should be placed in the hands of a single person, subject to the possession and administration of the property being brought to a close whenever the necessity or propriety for its further continuance should cease. This possession and administration would not necessarily terminate on the payment of debts, but when matters had reached that point the admin *161 istrator could not, for any reason of Ms own, continue to hold the property and administer it in spite of the wishes and opposition of the heirs. If the heirs pending an administration where there were no debts should elect to fix and settle their respective rights and obligations, it would be utterly o.ut of place, and even impertinent, for the administrator to make himself a party to that proceeding. So far from his being a necessary party to such liquidation, he would not be permitted to participate therein even were he to attempt to do so. For purposes of the settlement and payment of debts, the only property dealt with is that owned by the deceased at the date of his death, and that property is disposed of and applied by the administrator under orders of court in enforcement of the right of general pledge which creditors have in the property of that debtor, but the administrator has no right to call for the sale of the property for the purpose of making a partition between the heirs or bringing about the payment through him of their rights. For the purpose of settlement of the rights of heirs inter se the property dealt with is not only that belonging to the deceased at his death (belonging to the ordinary succession as it is called), but also that which has gone out of the succession by conveyances he had made to his children by way of donation or advancement d’hoirie. In that settlement, which covers much broader ground than does the settlement for the payment of debts, questions of collation and reduction are raised and passed upon to whose solution creditors of the deceased are not necessary parties. Should matters take such shape as to give them any legal concern in the settlement, the most they could ask would be to be permitted in proper cases ' on their own application to intervene. Oiv. Code, arts. 1235, 1264, 1453, 1504. The settlement of the “ordinary” succession is in the enforcement of their claims upon the property. The settlement of the “enlarged” or partitioning succession is in the interest of the heirs in right of “ownership of” the property. When the succession of a deceased person is placed under administration, that fact brings about in favor of the creditors of the succession “collectively” a separation of patrimony through which their rights are amply protected, for after such separation the heirs take actual possession of the property out of the hands and control of the administrator only on safeguarding creditors’ rights. Oiv. Code, arts. 1012- ‘ 1671. It is the duty of the administrator acting on their behalf to see that this be done. When, however, this has been done, the administrator no longer legally retains possession. Oiv. Code, art. 1047. Should the administrator in point of fact surrender the property without having seen to the securing of the creditors of the succession, he will render himself and his sureties liable to them, and the creditors themselves may have some additional remedy beyond this, but certainly the heirs who have settled contradictorily between themselves their respective rights could have no ground for complaint on that score. The only party- or parties who could claim redress in the premises would be those who had been legally injured, and the only parties who could be legally injured would be the creditors themselves. We are asked to undo and annul accomplished facts by parties having no interest in the objections and complaints which they urge. In the case at bar there are no complaining creditors, for all creditors have been paid. 111 La. 116, 35 South. 479.
There was no necessity for the purposes of the partition suit that the property sought to be partitioned should have been in the-actual possession of the heirs. Oiv. Code, art. 1320.
In 111 La. 116, 35 South. 479, we said that the successions of Conery and wife were closed. That may not have been strictly *162 and technically correct, for, until the administrator he actually discharged, the succession is still open; hut practically and substantially, and for the purposes of this suit, the successions must be dealt with as closed. It is urged that the interdict was not cited in the partition proceedings. The person originally appointed by the court as his permanent curator (on the advice and recommendation of a family meeting which had been homologated) qualified under his appointment, appeared and answered as such in the partition suit, joining and taking part in the proceedings which culminated in the decree of partition; but, though he did so, it is claimed he had not been legally cited. This curator had been originally cited in the case, but, all parties recognizing that there was a flaw in the family- meeting which had recommended him, the proceedings based on the citation made upon him were vacated, with the right reserved to plaintiff to make new parties. The same person was a second time recommended, appointed, and qualified as curator. He was then made a party through a supplemental petition, the citation accompanying which called upon him to answer that particular petition. It is insisted that in making an appearance, filing an answer, and joining in the partition proceedings under such circumstances, he waived- illegally the rights of the interdict, and the proceedings based on such a citation were null and void. It is contended that the interdict was entitled to service of a copy of the original petition, together with a citation to answer thereto. The prayer of the supplemental petition was “that the parties herein named (naming the curator and the interdict) be cited to appear and answer this suit, and that the relief as prayed for in the original petition be granted, and for general relief. “The answer” of the curator was: “Into court comes Edward J. Conery, Jr., who, for answer to plaintiff's original and supplemental petition, denies all and singular the allegations therein contained,” etc. The curator was unquestionably cited in the case. The notice given to him may not have been as explicit as he was entitled to have required, but in the act of the curator answering both petitions and pleading a general denial we see nothing in the nature of a waiver. The party answering was not a mere curator ad hoe, but the permanently appointed curator of the interdict. See Logan v. Herbert, 30 La. Ann. 727.
Appellant contends that division C of the district court was without right or authority to recognize the parties to the partition suit as heirs of Conery and wife and to send them into possession. He says the effect of this action was to wrest from division A possession and control over the succession property. There was really no necessity for any decree on the subject. The facts found as to the heirship of the parties'were admitted facts, and from such admitted facts flowed the consequences, of the heirs having the legal seisin of the property of the succession. This seisin is distinct from the actual and paramount seisin of the administrator. The heir could only take that seisin from the administrator on certain conditions. Bird v. Succession of Jones, 5 La. Ann. 645. The judgment complained of did nothing more than recognize the legal rights of the heirs; and did not attempt to forcedly wrest the property of the succession from the control and possession of division A. The execution by the auctioneer of the order to sell the property of the succession to effect a partition did not ipso facto operate a change of the possession. The auctioneer was not (in order to sell the property) called upon to .make a prior seizure of the same. The actual delivery of the property could only be made with the consent of the administrator, or (in case of his refusal to deliver) contradictorily with him by rule in division A of the court. If the delivery was voluntarily *163 made by the administrator in any given case, it is fair to presume that there existed no legal objection to its being done. If, on the contrary, it was made without authority, the creditors (the only parties aggrieved thereby) had their legal remedy. The creditors of a succession and the heirs of a succession each have rights, and we see no legal reason why they cannot consistently exercise them at one and the same time without interfering with each other. The only interest which creditors have in the matters is to see that they be paid. The debts are not partitioned. Oiv. Code, art. -. The creditors have nothing further to ask than payment. A usufructuary has as much interest in guarding his rights as a creditor has, and it has been held several times that the existence of usufructuary rights did not interfere with the fixing of the rights of the heirs inter se. Day v. Collins, 5 La. Ann. 589; Ogden v. University, 49 La. Ann. 195, 21 South. 685; Succession of Moore, 42 La. Ann. 332, 336, 7 South. 561; Succession of Glancey, 108 La. 421, 32 South. 356. When the creditors are paid, all objections which they could have urged to the proceedings die and disappear. They do not remain alive to be urged by the heirs.
Counsel refer to the civil district court and its divisions as having a probate side and also a civil side, but in this they are mistaken. That court is one of general jurisdiction. Succession of Loeper, 105 La. 780, 30 South. 131. It is a matter of frequent occurrence for a creditor holding a special mortgage on real estate which is included among the assets of a succession under administration to enforce his mortgage by ex-ecutory process leaving to the administrator the right (and the duty, if such should arise) of intervening in that proceeding for the protection of and for the benefit of the mass of creditors, or to particular creditors (exceptionally situated) the right of doing so on their own behalf. Brother v. Canal Bank, 14 La. Ann. 476.
There is one objection made by the appellant which we have so far failed to notice. It is the objection made that one of the members (the present curator of the interdict) of the family meeting which fixed on his behalf the terms of sale was at the time not 21 years of age, though he had been relieved from the disabilities attaching to minors. It is contended that he could not legally be a member of the family meeting, that the proceedings and recommendations thereof were absolutely without force and effect, and therefore the sale was made without the terms having been made on behalf of the interdict. The proceedings of the family meeting were (on the application of the curator then representing the interdict) approved and homologated. They were filed as part of the evidence in the case, and acted on when submitted. The objection under such circumstances (interposed after the sale had taken place under an order of the court, and after third parties had acquired rights based on the faith of the correctness and validity of the proceedings) came entirely too late; and, besides, we are by no means prepared to say that the minor, emancipated in the manner he was, was, as a matter of law, incompetent to be a member of the meeting. It is not advanced as a fact that he was not fully competent to act, or that there was any resulting injury. We have given this case our best consideration, and cannot reach the conclusion that the judgment appealed from is erroneous, and reverse it.
Appellant has made a very bitter attack upon the conduct of the administrator of the successions of Conery and wife, who is not a party to this suit. We do not view his acts as appellant does. The distressing condition in which the interdict and his family are placed is due not to the a&ministrator, but to misfortunes met by the interdict in business, followed, unfortunately, by his loss *164 of mind. This, coupled with the fact on the one hand that under such circumstances he is now called upon to respond to large demands for collation, while, on the other, the law itself gives to the heirs who purchase at a partition sale (article 1463) the right to retain the purchase price due hy them until their rights are definitely fixed, explains the legal situation without attributing other causes for it.
We are of the opinion that the judgment is correct, and it is hereby affirmed.
BREAUX, C. J., concurs in the decree.
PROVOSTY, J., holds that one division of the civil district court for the parish of Orleans cannot entertain a proceeding for the partition by licitation of property depending upon a succession under administration in one of the other divisions of the court; hut concurs in the decree.
MONROE, X, who, by reason of absence from consultation, did not participate in the judgment heretofore rendered, now concurs in the decree upon the grounds stated hy Justice PROVOSTY.