State vs. Arbuno.

No. 13,780.

STATE OF LOUISIANA VS. GUILLERMO ARBUNO.

|105  719|
|109  621|

105  719
110   11
e110  13
105  719
112  854
105  719
115  292
e115  293
105  719
118  706

### SYLLABUS.

1. A prisoner on trial, under our laws, can only exceptionally be permitted to stand by and suffer irregular proceedings to take place and then ask to have the proceedings reversed on account of such proceedings. Particularly is this so where the steps taken were taken at his own request. The law, by furnishing an accused party with counsel to defend him, places him on the same footing with all other defendants, and if he neglects, in proper time, to insist upon his rights, he waives them.

2. The introduction of secondary evidence without laying, at the time of its introduction, prior foundation therefor, can not be urged in the Supreme Court to reverse a judgment, where the record does not disclose, by bills of exception reserved at the time, that timely objection was made. It is too late to raise these objections in a motion for a new trial.

3. The Supreme Court does not take judicial notice of the rules of the District Court. Parties urging on appeal an infraction of these rules in the lower court, must file them in evidence and bring them up in the record. Proceedings below will be presumed to have been conducted in the District Court in accordance with its rules, in the absence of proof to the contrary.

4. The transfer from one section of the Criminal District Court for the Parish of Orleans to another, and a trial therein, are legal and constitutional, when done at the request of the accused, made in open court, and this fact is evidenced by the minutes of the court.

A PPEAL from the Criminal District Court, Parish of Orleans— Baker, J.

*Walter Guion,* Attorney General, and *J. Ward Gurley,* District Attorney (*Lewis Guion,* of counsel), for Plaintiff, Appellee.

*Paul W. Roussel* (*Lionel Adams,* of counsel), for Defendant, Appellant.

### STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. The defendant, having been tried on an indictment for murder, convicted of manslaughter and sentenced to imprisonment at hard labor for twenty years, appealed.

The indictment was returned on the 20th of February, 1899, in open court, before Section "A" of the Criminal Court. Defendant was ar-

raigned on the 27th of February, 1899, in Section "B" of the court. He was twice placed upon trial in Section "B."

On both of these trials the jury failing to agree, mistrials were entered. On these two occasions defendant was represented by Philip J. Patorno as his counsel. He was succeeded by P. C. Lasalle as counsel, Mr. Patorno, for some reason not disclosed by the record, having ceased to represent him. Mr. Lasalle was counsel of defendant under assignment of the court.

The minutes of Section "A" of the Criminal Court of November 8, 1900, disclose the following entry:

STATE OF LOUISIANA  
          vs.          } Indictment for Murder.  
GUILLERMO ARBUNO.

On motion herein filed by P. C. Lasalle, Esq., for Guillermo Arbuno, defendant herein, and with the consent of the said Guillermo obtained and declared in open court, the court ordered the above cause transferred from Section "B" of this court to Section "A" of this court. Now comes J. Ward Gurley, district attorney, and S. A. Montgomery, assistant district attorney, who prosecute for the State, and the defendant, Guillermo Arbuno, in person, being placed at the bar of the court, attended by his counsel, Paul C. Lasalle, the State and the defendant being ready, the following jurors (giving names) were regularly accepted, empannelled and duly sworn to act as such. The district attorney offered in evidence * * * Corporal Rawlins, Dr. LeMonnier, Anthony Pelegrinin, L. H. Delahoussaye and William J. Young, sworn by the clerk, examined as witnesses on part of the State, and cross-examined on behalf of the defendant. By consent of counsel for defendant, the district attorney read to the jury the testimony of Captain Day, Suprino Alojado, Mrs. Suprino Alojado and Mrs. Emile Benovich, as taken on the preliminary examination of the case. Mrs. Tienan, Charles Tienan, Daniel King, Mrs. M. Dorion; A. H. Scara, J. C. Bennet and Guillermo Arbuno were then sworn by the clerk, examined as witnesses on behalf of defendant, and cross-examined on the part of the State. After hearing the evidence, argument of counsel and receiving the instructions of the court, the jury returned the following verdict:

November 8, 1900.

Guilty of manslaughter.

(Signed)   JOSEPH A. TRELOT, Foreman.

State vs. Arbuno.

The court ordered the verdict recorded, the jury discharged from the case, and the accused remanded to await sentence.

The motion referred to in the minutes was as follows:

STATE OF LOUISIANA $\quad$ No. 28,533.

vs. $\qquad$ Criminal District Court.

GUILLERMO ARBUNO. $\qquad$ Section "B."

On motion of P. C. Lasalle, of counsel for the defendant herein, and on suggesting to the court that defendant is ill and now in jail for some eighteen months, and his case is pending before Section "B" of the Hon. Criminal District Court, and which is now in vacation and will not open before the month of December, 1900, and therefore defendant is desirous of having his case transferred from Section "B" to Section "A" of the Hon. Criminal District Court, in order that defendant may have a speedy trial.

That by agreement the State is ready to give defendant a trial on November 8, 1900.

It is ordered by the court that defendant's case be transferred from Section "B" to Section "A" of the Criminal District Court as agreed. Defendant prayed for a new trial, which was refused.

The application was made upon the following grounds of complaint:

1. That the prosecution against him was allotted to Section "B" of the Criminal Court, in pursuance of Article 139 of the Constitution of 1898; that thereby the judge of that section had exclusive control over said cause from its inception to its final determination; that no consent or waiver which could be entered into or made could deprive him of his constitutional rights in the premises; that the indictment herein, under and by virtue of which the prosecution was instituted in the Criminal District Court for the Parish of Orleans, was allotted to Section "B" of said court, and that the judge of Section "A" was without jurisdiction over the person of defendant, and was without legal authority to preside or try said case. That the trial by said judge of Section "A" in the premises was an absolute nullity.

2. That the verdict was contrary to the law and the evidence.

3. That the attorney who represented him upon his trial, viz, St. Paul Lasalle, was without authority in law to make any admissions or to waive any rights guaranteed to him by the Constitution and laws of

the State that would infringe upon his rights, or which would in any way deprive him of any privileges granted him by law. That on the trial hereof, on the 8th of November, 1900, the said Lasalle, who had been appointed by the court to defend him, without his knowledge and consent and by an agreement entered into with the prosecuting attorney, which was a violation of his constitutional rights in the premises, permitted the State to read to the jury sworn herein illegal evidence, without objecting thereto; that said evidence consisted of the testimony of one Suprino Alojado, which evidence purporting to have been given by the said witness before Hon. R. B. Otero, judge of the Second City Criminal Court, on the 26th of January, 1899; that at the time the said witness, Suprino Alojado, testified in the said Second City Criminal Court in the Spanish language; that on the trial hereof the said Suprino Alojado was absent from the jurisdiction of the court; that the interpreter, one Alcee LeBlanc, who interpreted the said testimony before the said Second City Criminal Court was also absent from the court. That on his trial hereof there was no evidence to show that the said Alcee LeBlanc had accurately translated what the said witness, Suprino Alojado, had stated on the preliminary examination; nor did he at any time and at this time herein claim that his translation was true and correct, nor does it anywhere appear that the said Alcee LeBlanc was ever sworn to serve as an interpreter and to accurately and faithfully translate the evidence of the said witness, Suprino Alojado. That by the admissions of his attorney and his consent that the illegal testimony of Suprino Alojado should be read on the trial he has been deprived of his constitutional rights in the premises. That he made the testimony of said witness a part of his motion for a new trial, also a note made to said testimony by the official stenographer of that court at the time the said Alcee LeBlanc acted as interpreter, which reads as follows:

"Suprino Alojado sworn. Residence, 936 Hospital street. Direct examination by Mr. Generelly. Note—This witness spoke Spanish and Mr. Alcee LeBlanc acted as interpreter."

That the reading of the said testimony of the witness, Suprino Alojado, to the jury was calculated to mislead them.

4. That Paul Lasalle, herein appointed by the court as his attorney, and on his trial on the 8th day of November, 1900, in violation of law, by agreement, without his consent or knowledge, permitted to be read to the jury sworn illegal evidence of one Mrs. Suprino Alojado, without objecting thereto; that said testimony was taken on May 18th, 1899, by

the then official stenographer of Section "B" of the Criminal District Court, viz: G. A. Mandeville; that said testimony of said witness, Mrs. Suprino Alojado,was not taken before any committing magistrate, but was taken on a former trial of mover, before Section "B" of the Criminal District Court for the Parish of Orleans, and which said trial resulted in a mistrial. That said witness, Mrs. Suprino Alojado, has since died, as mover is informed; that said testimony should not and could not in law be read to the jury, for the reason that there is no statute of this State which permits the reading of testimony taken in such a manner to be read at any subsequent trial; that furthermore the official stenographer, G. A. Mandeville, who took said testimony of said witness, is also dead, and that said testimony of said witness, Mrs. Suprino Alojado, was not certified, and hence could not be read in evidence on the trial hereof. That the consent to read in evidence the said illegal testimony was a violation of mover's legal rights in the premises, and mover further says that there was no legal proof adduced before the court upon his trial to show that said evidence of Mrs. Suprino Alojado was evidence given by her; that mover, for the purpose of showing that said evidence was taken by said G. A. Mandeville, the official stenographer, at a former trial had in Section "B," makes said evidence and endorsements thereon as it appears in this record a part of this motion for a new trial as if written and embodied as a whole. That said evidence as read to the jury sworn was a violation of mover's rights in the premises and calculated to prejudice the jury against him.

5. That Paul Lasalle, the attorney who represented him on the trial of this cause, and who was appointed by the court to defend him, without his consent or knowledge, and by agreement entered into with the prosecuting attorney, which was in violation of his constitutional rights in the premises, permitted the State to read in evidence to the jury sworn herein, and on his trial, the illegal evidence of one Mrs. Evaline Benovich, without objecting thereto; that the evidence of the said witness was evidence purporting to have been given by her before R. B. Otero, judge of the Second City Criminal Court, on the 26th day of January, 1899. That said evidence could not be read on the trial herein and that the consent to read the said testimony of Mrs. Evaline Benovich was a violation of mover's legal rights in the premises, and mover further avers that there was no legal proof adduced before the court upon his trial to show that said evidence of Mrs. Evaline Benovich was evidence given by her or that she was dead; that the reading of the said

illegal evidence to the jury was calculated to mislead the jury and to prejudice them against him; that the testimony of said Evaline Benovich is made part of this motion for a new trial.

6. That at the time the evidence of these witnesses, viz: Mr. Suprino Alojado and Mrs. Suprino Alojado and Evaline Benovich, were read to the jury, the State did not lay the proper foundation to show that the said witnesses were dead or permanently absent, or that they could not be found, or that they had permanently removed from the State, or that said testimony was a true and correct testimony of the said witnesses; all of which mover claims should have been done as a matter of law, before said testimony could be read to the jury on the said trial; and all of which said acts were calculated to prejudice the jury against him and to his detriment. That no consent could have been entered into by his attorney to deprive him of his constitutional rights in the premises, and that the reading of such illegal testimony of the said witnesses was a grave error which caused him irreparable injury. That Paul Lasalle, who was appointed by the court as his attorney, to see that all of his rights were preserved to him, had no power or authority to waive or consent in any manner, any of the rights guaranteed to him by law; that he was on trial for his life, and the attorney appointed by the court ought to have seen that every right guaranteed to him by law was strictly enforced.

That for the reasons herein stated and offered, your mover now represents that he is entitled under the law to be granted a new trial.

### Opinion.

It is contended by appellant that the verdict of the jury and the judgment of the court based thereon are absolute nullities, for the reason that the cause was originally allotted to Section "B," and was not reallotted or reassigned to Section "A," but was transferred to the latter by the judge thereof, without the consent of the judge of Section "B," and without authority.

In the examination of the claim we must start with the conceded fact that the two sections of the Criminal District Court of New Orleans are not independent courts, but branches or divisions of a single court, and therefore the term jurisdiction, as applied to judicial action, in one or the other, has to be used in a limited or qualified sense. Pironi vs. Riley, 39 Ann. 304; Block vs. Marks, 47 Ann. 109.

We must not lose sight of the fact that there was in fact, an original

allotment of the cause in compliance with Article 139 of the Constitution of 1898. There was, therefore, no selection by the State of a particular section of the court, through which *ex parte* selection the accused could have been prejudiced.

He occupied originally the position which he had the constitutional right to occupy. What we are called on to consider, therefore, are the circumstances under which a change from that situation was effected; at whose instance it was accomplished; who the complaining parties are at such change and whether the same was legally authorized or not.

Article 139 of the Constitution of 1898 is a reproduction, with some modifications, of Article 130 of the Constitution of 1879. That article confers upon the Criminal District Court authority to adopt rules not in conflict with law, regulating the order of preference and proceedings on the trial of cases and the method of allotting or assigning such cases and of reallotting and reassigning them in case of vacancy in the office, recusation, absence or disability of one or more of the judges, or in case such action is deemed necessary for the proper administration of justice. All prosecutions instituted in and all the cases appealed to said Criminal District Court shall be equally allotted or assigned by classes among the judges, and each judge or his successor shall have exclusive control over any case allotted or assigned to him from its inception to its final termination in said court, except as herein otherwise provided.

The only later article of the Constitution which may have a bearing on the subject which we have noticed is Article 150, wherein it is de clared that the laws regulating the sessions of and practice in the Civil and Criminal District Courts for the Parish of Orleans, and the city courts of New Orleans, which may be in force at the time of the adoption of this Constitution shall, if not in conflict herewtih, remain in force until otherwise provided by the General Assembly.

In State vs. Williams, 34 Ann. 1200, Mr. Justice Manning declared that ."the sole object of the constitutional requirement that criminal prosecutions shall be apportioned between the judges by lot is to prevent any selection of cases by preference. Chance must determine which judge shall try each case; when that is accomplished, I think it a matter of indifference how or at what stage of the proceedings the lot is cast. The constitutional provision is of that class that requires the most liberal construction in the interests of society and public order."

These remarks were approvingly referred to in State vs. Beeder, 44 Ann. 1012. In State *ex rel.* Buisson vs. Lazarus, Judge, 33 Ann. 1425

(decided in 1881), this court declared that by the terms of the article of the Constitution the judge to whom a cause has been assigned has alone the power of rendering judgment on the merits. But the constitutional direction is not one of public order and does not strike with absolute nullity such a judgment when rendered by any of the other judges. The parties to the suit themselves may consent that the judgment be so rendered. Therefore a judgment rendered by any other judge than the one to whom the cause is assigned, in case of absence or other disability of the latter, may be valid if no timely opposition be made thereto.

The court, after referring to the fact that the District Court was one court, though composed of several divisions, declared that "the objection of incompetency, which had been urged, was one levelled, not at the judicial power of the court, as a constitutional organization for the administration of justice in all civil cases contemplated, but directed against the right of one of the members of exercising its powers, who, in certain contingencies provided by the Constitution, could have lawfully wielded all of them independently of the will or consent of litigants amenable to the court. That it was argued that from the fact that in clear terms it provides that the judge to whom a case shall have been allotted and assigned, shall have exclusive control over it from the beginning to end, it follows that it impliedly prohibits every other judge from taking jurisdiction over it, unless in case of absence or sickness and then only for certain purposes, and therefore from passing upon the merits.

That is undoubtedly so; but is that one implied prohibition such that individuals can not renounce the benefit of the allotment or assignment established in their favor, when such renunciation is not actually prohibited, when it does not affect the rights of others and is not contrary to public good? We do not think so.

In State vs. Adotto, 34 Ann. 1, the defendant, who had been convicted of murder in Section "A" of the Criminal District Court, urged in behalf of a new trial that the cause had never been allotted as required by the Article 130 of the Constitution.

The application was resisted on the ground that the objection came too late; that it should have been urged before trial; that having failed to make it he had waived it. This court was of opinion that it had not been waived, and by pleading could be raised after verdict.

In disposing of the question the court said: "It was not necessary to

State vs. Arbuno.

decide formally whether the accused could or could not have waived the advantage of the constitutional mandate in a criminal prosecution. It was certain he had not done so before the object of the prosecution, the trial, had been consummated by judgment and his sentence to hard labor for life. The accused was in time to object before judgment. His motion for a new trial was a proper proceeding. The objection might have come too late after judgment and sentence so as not to be reviewable on appeal or by *habeas corpus*."

In a civil suit, Pironi vs. Riley, 39 Ann. 305, this court said: "What occasion has the defendant to complain of the transfer as made? Nowhere does the Constitution say that no division of the Civil District Court shall hear and determine a case not regularly allotted to it when the parties make no objection or consent. With a view to correct previous abuses the Constitution wisely provides for the allotment of cases before that court, and this court, after mature deliberation of the spirit and letter of the provision, has held that it is not mandatory, but merely directory. Therefore, in the absence of objection for want of an allotment, the parties are viewed as assenting to the jurisdiction as though the allotment had been made and the division is authorized to exercise over the controversy all the powers of the court itself. (Buisson's case, 33 Ann. 1425.) The Constitution, however, provides and has been construed as meaning differently in criminal matters. (Adotto's case, 34 Ann. 1.)'"

Hence, we conclude that as the plaintiff voluntarily executed the order of transfer from one division to another rendered on exceptions of defendant, and has invoked the jurisdiction of the division to which the case has been transferred, plaintiff has exercised a right of waiver if the transfer was objectionable and that the defendant can not complain."

In 1890 the General Assembly passed an act entitled "An Act making it the duty of the judge of one section of the Criminal District Court for the Parish of Orleans to try with the consent of the accused or prisoner any cause allotted to the other section, in all cases of vacation of the other section, or whenever the judge thereof may be sick, absent or otherwise disabled from acting, or for any cause other than vacancy or recusation."

The first section of the act follows the phraseology of the title. The second section declares that the consent of the accused or prisoner to be so tried shall be obtained and declared in open court at any time before

trial, and shall be entered on the minutes of the court and the case shall be tried according to such rules as the court may make."

In State vs. Beeder, 44 Ann. 1007 (decided in 1892), this court referred to a distinction between that case and one therein cited, in which there had been an allotment, but one irregular as to the manner in which it had been made, saying: "If defendant's intention was to contest merely the manner of the allotment, he should have urged it before going to trial and should have made known the specific grounds he relied on. To say that the allotment was not such as the Constitution required was entirely too general. But, as has been said, the Constitution (of 1879) is absolutely silent as to any details of the allotment in the Criminal District Court. In the first part of Article 130 (when referring to the Civil District Court) the allotment was ordered to be made under "rules of court," to be adopted for that purpose, but in the latter part (when referring to the Criminal District Court) nothing was said on that subject. In the absence of any statute requiring it the only possible way for the Criminal District Court to carry out the provision of the Constitution was (as the Civil District Court was required to do) to establish rules to govern its action, and we presume not only that it has done this, but that the allotment in this case has been made in accordance with them. If the allotment was not so made, it was defendant's duty to have shown that fact affirmatively, and he should have introduced the rules in evidence and brought them up with the transcript. Only in that way can we come to a knowledge of them (Hennen's Digest, p. 76, No. 4)."

We are not informed by the present record whether the Criminal District Court has or has not adopted rules on the subject of the reassignment or transfer of cases for trial, during the vacation of the court, from one division to another, but the transfer in this particular instance was made in exact conformity to and under the express authority of Act No. 117 of 1890. Defendant has not only not attacked the constitutionality of the act in his pleadings in the lower court, but he there invoked for his own benefit the provisions of that act and at his instance (the State not objecting) his case was tried before Section "A." He was in prison at the time and sick and desired a speedy trial, and to that end sought a trial in Section "A." In so doing he exercised what is referred to in law as a "right of waiver." His position in this matter was not (as was the situation in the Adotto case) one of silent acquiescence until after verdict of what had been omitted to have been done, and what should have been done by the public authorities. They, in the

present instance, had done all that the law required of them. Defendant's case had been legally allotted. Allotments, under the Constitution, are made for the protection of the defendants in suits as against a possible selection by plaintiffs, for special reasons of their own, of particular divisions of the court. The object having been accomplished, the parties were free by common agreement and consent to alter the situation to suit their interests or convenience. We have before us no one complaining other than the very party at whose solicitation arose the condition which he now seeks to utilize by repudiating.

There is a factor in this case absent from that of Adotto's. The State invokes not only acquiescence but estoppel.

We are of the opinion that he had the right to waive trial in Section "B," and that the judge of Section "A," in granting his request to that effect, violated no law. In making his request he recognized his confidence in the ability, integrity and impartiality of the judge of that section. He urges no objections on that score now. As matters stand, we can see no possible injury to him in anything that has been done.

Appellant claims a reversal of judgment on the ground that certain testimony was allowed to be introduced on his trial as secondary evidence without the prior laying of a legal foundation for its introduction. No objection was made or exception taken at the time this testimony was taken to the legality or propriety of the course pursued, and of course no bills of exception were reserved. It is conceded that a complaint of that character coming before this court under these conditions would not be ordinarily entertained. It is urged that matters are presented to us under exceptional circumstances and of character such as to call for a departure from the general rules of practice.

The particular fact depended on is that the defendant in this case was defended, not by an attorney selected and paid by himself, but by counsel assigned to him by the court. It is urged that this counsel was without authority to allow this testimony to have been introduced without prior proof by the State of the death and of the absence of the witness whose testimony was offered, and of the proof of the correctness of that testimony as taken down, by the testimony of the interpreter who translated the testimony and the stenographer who took it down.

It is not advanced that as a fact the testimony was not correctly translated, nor correctly transcribed, nor that that fact could not have been established, but simply that that fact was not affirmatively shown on the trial. The record shows that this same testimony had been used just as

it was, without objection, from the defendant on a former trial. It is not advanced that the witnesses were not, in point of fact, dead and absent, nor denied that that fact could have been shown if the proof was exacted. It is simply claimed that the fact of absence and death should have been affirmatively shown; that a failure by his counsel to have required such proof was a waiver or renunciation of his rights which counsel was not authorized to make; that an assigned counsel was nothing more than an *amicus curiae,* and it was the court's duty to protect him now, as it was formerly its duty when no counsel was assigned to defend accused parties. We can not agree with counsel in this last proposition. The very object of the assignment of counsel was to relieve the court from the burden of this duty. It still has the right to protect an accused party from illegal action, but its failure to take action is certainly no ground for reversal. We must not be understood as saying that the counsel of accused was not warranted, in the interest of his client and speeding his trial, in not raising the objections nor insisting upon the proof which present counsel contends should have been produced, when he was fully satisfied that the proof could have been made, and the insisting upon its being made would have simply entailed a continuance of the case. Neither must we be understood as saying that, under the circumstances of this case, it could have been exacted.

In McKinney vs. The People, 17 Ills. 556, it was held that "a prisoner on trial under our laws has no right to stand by and suffer irregular proceedings to take place, and then ask to have the proceedings reversed on error on account of such proceedings. The law, by furnishing him with counsel to defend him, has placed him on the same platform with all other defendants, and if he neglects, in proper time, to insist upon his rights, he waives them." (See also Perteet vs. People, 70 Ills. 171; Bulliner vs. People, 95 Ills. 394, and Graham vs. People, 115 Ills. 566.)

Bishop makes the following observations on the same subject: "It is a doctrine to which there are few exceptions that a party in a cause may waive any right which the law has given him, even a constitutional one." Bishop's New Criminal Law, Vol. 1, Sec. 995, and cases there cited.

"A defendant who does not object to illegal evidence, but permits it to go to the jury, can claim nothing afterwards on the ground of its admission." Same Vol., 4th division, Sec. 997.

"In natural reason, one should not complain of a thing done with his consent. And the law, in all its departments, follows this principle. It

is analagous to estoppel, or a species of it." Bishop's New Criminal Procedure, Vol. 1, Sec. 117.

"If, except where some counter doctrine presses with a superior force forbidding, a party has requested or consented to any step taken in the proceedings, or if at the time for him to object thereto he did not, he can not afterwards complain of it, however contrary it was to his constitutional, statutory or common law rights." Same Vol., Sec. 118, and cases there cited.

"Necessity is the chief foundation for this doctrine. Without it, a cause could rarely be kept from miscarry. The mind, whether of the judge or the counsel, can not always be held taut like a bow about to send forth the arrow, and if every step in a cause were open to objection as well after verdict or sentence as before, a shrewd practitioner could ordinarily so manage that a judgment against his client might be overthrown. Even by lying by and watching, if he did nothing to mislead, he would find something amiss, to note and bring forward after the time to correct the error had passed." Bishop's New Criminal Procedure, Vol. 1, Sec. 119.

We find no legal ground for reversing the judgment. It is therefore affirmed.

Mr. Justice MONROE concurs in the decree.

Rehearing refused.