JOAQUÍN MÁRQUEZ ET AL., Petitioners and Appellees, *v.* INSULAR BOARD OF ELECTIONS, Respondent and Appellant, and MANUEL PEREYÓ ET AL., Interveners and Appellants.

No. 4928. Argued November 15, 1929.—Decided May 23, 1930.

1

2

*R. Martínez Nadal* and *Bolívar Pagán* for interveners-appellants; *James R. Beverley, Attorney General,* and *Tomás Torres Pérez, Assistant Attorney General,* for the Insular Board of Elections; *Arturo Aponte* and *F. Gallardo Díaz* for appellees.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

In this case Joaquín Márquez and others filed a petition in certiorari in which they alleged, among other pertinent matters; that the Insular Board of Elections of Puerto Rico had stricken out and excluded from the poll lists of Humacao the names of 256 persons who appeared as registered voters, and that such exclusion had been made in each instance by virtue of a judgment of the Municipal Court of Humacao; that in the election which took place on November 6, 1928, the said 256 excluded voters, by means of affidavits, succeeded in casting their ballots, claiming that they had not been excluded, whereas they had actually been excluded, and that their votes had not been counted, the corresponding ballots having been challenged and protested; that the Insular Board of Elections, upon canvassing the returns, awarded to the *"Socialista Constitucional"* Party the 256 ballots of the persons already referred to, with the result that the candidates of that party secured a majority of 43 votes over the plaintiffs, who were the candidates of the *"Alianza Puertorriqueña"* as the opposing party; that the Insular Board of Elections, when making the said canvass, had no authority to count the said ballots of persons who had been excluded from the poll lists. They prayed for the issuance

of a writ directing the defendant Board to send up the poll lists of Humacao, the tally sheets and the protested ballots which had been counted in the canvass and advising the Board that the canvass made was not final until the instant case was decided; and finally for a judgment setting aside the decision of the respondent which awarded to the *"Socialista Constitucional"* Party the votes represented by the protested ballots.

The writ issued in accordance with the prayer of the petition for the sending up of the documents mentioned and was complied with by the Insular Board of Elections.

Manuel Pereyó and others, who were candidates, respectively, for mayor and for members of the Municipal Assembly of Humacao, applied for and were granted intervention in the proceedings, and in their answer they alleged: That the exclusion of the 256 persons referred to in the certiorari petition was void by reason of the nullity of the orders made by the Municipal Court of Humacao, in that the hearing of the exclusion cases took place on July 27, 1928, which was a legal holiday, and the court never acquired jurisdiction of the interested voters, who had not been legally summoned; that the excluded voters cast their ballots by means of affidavits because their names had been illegally stricken out, and that the canvass was made in accordance with the law. They denied other averments of the said petition. They also filed a motion to quash, based on the grounds that the petition did not state facts sufficient to constitute a cause of action; that the Insular Board of Elections had no authority to reject the ballots cast by means of affidavits or to pass upon the capacity of the voters; that it is sought to review the action of the poll boards of Humacao, and that the court had no power to determine the final outcome of the election.

The court in bank decided the issues raised and granted the petition in certiorari. It adjudged as void the general canvass made by the Insular Board of Elections on December 12, 1928, in regard to the ballots cast in the precinct of

Humacao on November 6, 1928, in so far as it awarded to the *"Socialista Constitucional"* Party 203 ballots, cast by voters who voted by affidavit at the election and whose names had been stricken out from the voting lists. It also declared the nullity of the certificate of the said canvass and ordered its correction so as not to count or award the protested ballots. The judgment is dated February 11, 1929, and an appeal therefrom has been taken by the interveners. We are dealing herein with case No. 4928 of this court.

The interveners and appellants have assigned five errors. For the purpose of the present decision we deem it advisable to transcribe here the specification of errors made, as follows:

"First error. The District Court of San Juan erred in holding, by its decision in the case at bar, that the qualifications of voters and the legality of protested ballots could be determined within the certiorari proceeding prescribed by section 89 of the Election Law.

"Second error. The District Court of San Juan erred in holding that the certiorari proceeding provided by section 89 of the Election Law was the proper remedy for passing upon the acts of officers or organizations not connected with the Insular Board of Elections.

"Third error. The District Court of San Juan erred in holding that the 201 ballots in controversy in this case were protested ballots.

"Fourth error. The District Court of San Juan erred in holding that the Insular Board of Elections ought not to have counted the 201 protested ballots in controversy.

"Fifth error. The District Court of San Juan erred in holding that the judgments of the Municipal Court of Humacao, striking out the names of the 201 voters affected by this litigation, were valid and lawful judgments."

It would seem that preference should be given here to such matters as are related in some way to the question of jurisdiction. The fifth assignment of error in the present case merits such preferential treatment.

The parties in the court *a quo* made a stipulation (Tr. of Ev., pp. 66–67) admitting as a fact that the hearings on the

exclusion took place on July 27, 1928. Such fact appears also from a certificate of the municipal judge.

We fail to see why any argument is based on the provisions of section 32 of the Election Law as enacted in 1919. In the same brief of the interveners citation is several times made of the Election Law as amended. Section 32 thereof was amended in its pertinent part by Act No. 1 of 1924, as follows:

"The date for the hearing of appeals from decisions of the Insular Board of Elections by municipal and justice of the peace courts as authorized by this section shall be not later than the first day of August of the year in which they are made, and the courts by which such appeals are heard shall render decisions on the same not later than the fifteenth day of August of such year; *Provided*, however, That the hearings and decisions on appeals as hereinbefore authorized and required by this Section may be held and made in cases pertaining to the registrations and elections of 1924 until the fifteenth day of August and the first day of September of the said year, respectively.

\* \* \* \* \* \* \* ''

The citation of the act of 1919, which provided differently for the hearing of such cases, is entirely erroneous.

What was the procedure followed by the Municipal Court of Humacao? This is an important point, which we can not fail to discuss and determine.

In these cases a voter applied to the Insular Board of Elections to have certain names stricken out from the voting lists of Humacao because the persons affected lacked all or some of the legal requirements to qualify them as voters. The Board followed the proper procedure and, in pursuance thereof, it denied the exclusions sought. Thereupon the petitioner appealed to the Municipal Court of Humacao, which on July 20, 1928, set the 24th of the same month and year for the reading of the calendar of such appealed cases and directed the marshal to post a copy of its order at the place where edicts are posted for the information of attorneys and the public in general. At the sitting on July 24, 1928,

all the cases on the calendar, from No. 1 to No. 301, were set for the 27th of that month and the rest for the 28th following. At the end of the order setting the cases the following appears:

"A copy of this list of cases shall be posted by the marshal of this court at the place where edicts are posted and another copy shall be forwarded to each of the local representatives of the two principal political parties. Humacao, P. R., July 24, 1928. (Signed) Miguel A. Burset, Municipal Judge."

The following was appended thereto:

"Received one copy for use by Section No. 23 of the Socialist Party. (Signed) Joaquín A. Burset, Member.

"Received one copy for use by the Union Party of P. R., July 24th, 1928. (Signed) Rocafort, Pres."

From the start this procedure seems to be hardly in accord with the spirit of the law. In the first place, the necessity for posting the notice of the reading of the calendar is not apparent.

Either the parties had to be notified, or no notification was required. If the former, the method followed is not the legal one; if the latter, what was done was superfluous.

A calendar containing nearly 600 cases was read. Out of that number 301 cases were set for hearing on a single day, July 27, or three days after the setting was made. No shorter period could be imagined—three days within which each one of these hundreds of voters had to prepare his defense and gather the necessary evidence.

There is an aspect of the proceeding which can not be allowed to pass unnoted. Notice of the settings was to be served, but on whom? Was it served, perhaps, on those whose rights were going to be questioned? No. A copy was delivered to the representative of the *"Socialista"* Party, and another to that of the *"Unión de Puerto Rico"* Party. These gentlemen, whatever their interest in the electoral campaign, did not represent before the court the

voters sought to be excluded. Nobody can positively state that they were such representatives. The service of the said notice on them was improper within the proceeding.

It may be asserted here that, far from compliance being had in such proceeding with any rule of legal procedure, all the guarantees which the latter affords to a citizen for his own defense were practically violated. Such a result was not contemplated by the Election Law, section 32 of which provides that all appeals thereunder "shall be heard according to the rules of evidence and judicial procedure that govern actions in civil cases."

We fail to see that the Municipal Court of Humacao followed the procedure governing actions in civil cases.

The following excerpt is taken from the decision in *Padilla* v. *Justice of the Peace,* 35 P.R.R. 276, 281:

"It is clearly a speedy and summary proceeding, but it does not mean that a person may be deprived of a right without even knowing that he has been sued and without having been served with a copy of the complaint, but only having been summoned in a manner so confusing that it could be thought that he was being subpoenaed as a witness rather than as a party to the proceeding. The Legislature was careful to provide expressly in the Act, as we have seen, 'that such cases shall be heard according to the rules of evidence and judicial procedure that govern actions in civil cases.' Under the special circumstances it permits a reduction of time, the greatest possible simplicity in the proceedings and a speedy trial and decision, but it can not permit an absolute failure to give the interested party his day in court."

It matters not that a particular question has not been raised by the appellant. That can not restrict the action of this court. The Act of March 12, 1903, establishing the Supreme Court as a court of appeals, contains a section (1141, Revised Statutes of Puerto Rico), which reads as follows:

"That the Supreme Court of Puerto Rico shall hereafter be a court of appeals and not a court of cassation. In its deliberations and decisions, in all cases, civil or criminal, said court shall not be con-

fined to the errors in proceeding (procedure) or of law only, as they are pointed out, alleged or saved by the respective parties to the suit, or as set fourtli (forth) in their briefs and exceptions, but in furtherance of justice, the court may also take cognizance of all the facts and proceedings in the case as they appear in the record, and likewise consider the merits thereof, so as to promote justice and right and to prevent injustice and delay.''

The above quoted provision, which enables us to disregard technicalities to a certain extent, is of the utmost importance in broadening the sphere of action of this court, so that, free from any improper restraint, it may dispense justice in its highest form.

In our opinion there was no proper notification to the parties in the said proceeding. Notice was served on the political parties, but not on the interested voters. Therefore, it might perhaps be said that it was the political parties who appeared at the hearings and not the voters whose exclusion was sought.

The large number of cases set for hearing on each day is a circumstance which can not be overlooked. 301 cases were set for July 27, 1928. The hearings were to commence at 9 a. m., and it must be assumed that they were adjourned at noon and resumed at 1 p. m. until 7 p. m. This would make available three hours in the morning and six in the afternoon. Allotting at least ten minutes to each case, the 301 cases would require 50 hours and 10 minutes, which is 41 hours and 10 minutes in excess of the nine hours already estimated. Really, it is not to be expected that those 301 cases could be heard in the customary way in a single day. We must conclude that the setting was irregular and anomalous.

But there is another question which must be fully considered here. The interveners contend that the exclusion cases were heard on a legal holiday, on which day they could not be legally tried.

Section 1 of Joint Resolution No. 45, approved July 24, 1923, reads as follows:

"Section 1.—That the twenty-seventh day of July of 1923 and of each subsequent year is hereby declared an official and legal holiday in Porto Rico, and during such day all public offices of Porto Rico, Insular and Municipal, shall remain closed."

A proper determination of this question requires the citing of other statutory provisions.

Sections 10 and 11 of the Code of Civil Procedure read as follows:

"Section 10. The courts of justice may be held and judicial business be transacted on any day, except as provided in the next section.

"Section 11. No court can be opened, nor can any judicial business be transacted on Sunday, on the first day of January, on the fourth day of July, on Christmas or Thanksgiving day, or on a day on which the general election is held, except for the following reasons:

"1. To give, upon their request, instructions to a jury when deliberating on their verdict.

"2. To receive a verdict, or discharge a jury.

"3. For the exercise of the powers of a magistrate in a criminal action, or in a proceeding of a criminal nature; Provided, That in civil causes orders of arrest may be made and executed; writs of attachment, executions, injunctions and writs of prohibition may be. issued and served; proceedings to recover possession of personal property may be had; and suits for obtaining any such writs and proceedings may be instituted on any day."

Section 387 of the Political Code is as follows:

"Section 387. Holidays, within the meaning of this code, are every Sunday, the first day of January, the twenty-second day of February, the twenty-second day of March, Good Friday, the thirtieth day of May, the fourth day of July, the twenty-fifth day of July, the first Monday of September, to be known as Labor Day, the twenty-fifth day of December, every day on which an election is held throughout the island and every day appointed by the President of the United States, by the Governor of Porto Rico or by the Legislative Assembly, for a public fast, thanksgiving, or holiday.

When any such day falls upon a Sunday, the Monday following is a holiday.''

For the purpose of this decision it is advisable to distinguish, as the Code of Civil Procedure itself does, between the various acts which courts of justice perform. Some acts may be performed without the necessity of opening the court and holding a public session, while others require a session in open court with the attendance of such officers as the clerk and the marshal. This distinction is particularly to be noticed from sections 12, 13, 14, 15 and 16 of the said code relating to the holding of court sessions, section 11 already cited and section 22, which deals with the powers of judges at chambers.

Joint Resolution No. 45 of 1923, which is mandatory in its letter and spirit, provides that all public offices, both insular and municipal, shall remain closed on the date mentioned in that Resolution. The first logical conclusion to be drawn from this enactment is that any judicial act requiring a public session in open court is not legally possible on such a date, and if attempted it would be void as contrary to law.

This applies to the public session held by the Municipal Court of Humacao on July 27, 1928, to hear the said exclusion cases.

A logical construction of the enactment leads us to conclude that Joint Resolution No. 45 did nothing more than add another official and legal holiday to the number already existing under previous statutes, such as the Code of Civil Procedure.

There has been an extensive discussion on the part of counsel as to judicial days and as to nonjudicial days, referred to in the decisions from the various States under the Latin expression *''dies non juridicus.''* The authorities are far from uniform.

In *Havens* v. *Stiles,* 101 Am. St. Rep. 195, 8 Idaho 250, 67 Pac. 919, the facts involved referred to the filing of a

complaint and the issuance of a summons on a Sunday, and it was held that these were ministerial acts. But what should especially concern us from that decision is that the statute therein applied included a section or article (number 3866), reading as follows:

"No court can be opened, nor can any judicial business be transacted on Sunday . . . except for the following purposes:

"1. To give, upon their request, instructions to a jury when deliberating on their verdict.

"2. To receive a verdict or discharge a jury.

"3. For the exercise of the powers of a magistrate in a criminal action or in a proceeding of a criminal nature: provided, that in civil causes orders of arrest may be made and executed, writs of attachments, executions, injunctions and writs of prohibition may be issued and served."

That enactment is substantially the same as the corresponding provision in our statute. From the opinion of the court in the cited case (*Havens* v. *Stiles, supra*) we quote the following:

"In Whipple v. Hill, 36 Neb. 724, 55 N. W. 227, 20 L.R.A. 313, 28 Am. St. Rep. 742,—a very instructive decision,—a statute very similar to ours is construed. The opinion says: 'By section 9, c. 41, Comp. St., it is provided that the first Monday in the month of September in each year shall hereafter be known as 'Labor Day', and shall be deemed a public holiday, in like manner and to the same extent as holidays provided for in section 8 of chapter 41 of the Compiled Statutes of 1887. A reference to the calendar will disclose that the 1st. day of September, 1890, on which date the attachment in question was issued, was Monday; therefore, under the foregoing provision, was a public or legal holiday. The objection to the issuance of the writ of attachment in this case on Labor Day is based upon section 38, c. 19, Comp. St., which declares that: 'No court can be opened, nor can any judicial business be transacted on Sunday or any legal holiday except: 1st. To give instructions to a jury when deliberating on their verdict. 2nd. To receive a verdict or discharge a jury. 3rd. To exercise the powers of a single magistrate in a criminal proceeding. 4th. To grant or refuse temporary injunction or restraining order.' The legislature, by the section quoted, has

prohibited the courts of the state from being opened, and from the transaction of any judicial business, with certain well-defined exceptions, on any day declared by statute to be a public or legal holiday. It will be observed that the prohibition of the statute, so far as the transaction of business on holidays is concerned, relates to acts which. in their nature, are purely judicial, and does not apply to such as are merely ministerial. The language of the section is plain and unambiguous, and should not be extended by judicial interpretation beyond the plain import of the words used. Had the legislature intended to debar the courts or court officers from performing ministerial acts upon holidays, words suitable to express such an intention would have been employed. If the transaction of all legal business was forbidden, on such days, as is the case in some of the states, we would grant that the order in question would be void; but the statute fails to so provide. 'It is the opening of courts and the transaction of judicial business on legal holidays which the law forbids.' This intent is clearly manifest.''

It is evident that the court considered the distinction between such functions and acts as require a session in open court and those which do not so require it, and held that the prohibition of the statute applied to *purely judicial* acts and not to those acts which are ministerial.

The appellees have invoked our decision in *People* v. *Díaz*, 33 P.R.R. 478. That case is not similar to the case at bar. In the former, it could rightly be said that the proclamation of the Governor was in the nature of a recommendation. In the instant case there is involved a law with a mandatory provision declaring the day in question to be an official and legal holiday.

In *Ex parte Dal Porte*, 244 Pac. 355, decided by the Supreme Court of California on February 24, 1926, it was said:

''Section 134 of the Code of Civil Procedure provides:

''No court, other than the Supreme Court, must be open for the transaction of judicial business on any of the holidays, mentioned in section ten, except for the following purposes:'' (Then follows an enumeration of certain acts which may be legally performed on a holiday, but the trial of an action and the pronouncement of judg-

ment against a defendant convicted of a crime are not included among them.)

"Section 10, mentioned in said section 134, Code of Civil Procedure, obviously refers to section 10 of the Code of Civil Procedure, which was amended in 1925 to read as follows:

" 'Holidays within the meaning of this Code are every Sunday and such other days as are specified or provided for as holidays in the Political Code of the State of California'."

It was also stated in that decision that prior to the amendment of 1925, section 10 of the Code of Civil Procedure was substantially the same as section 10 of the Political Code, which specified what days were holidays and designated Saturday afternoon as a holiday. The statute, however, was subsequently amended in the manner above indicated. The court held that Saturday afternoon was a legal holiday and nonjudicial period and that any judgment rendered on that afternoon was void, but that this did not deprive the court of jurisdiction to proceed further with the case.

There is no doubt that it was the intention of the Legislature to establish, by the joint resolution already cited, a holiday, and the words *"official and legal holiday"* have a very plain meaning and do not refer exclusively to administrative offices. Courts can not function on legal holidays, except for the transaction of such business as the law itself has prescribed in a clear and express manner. This exception confirms the rule that they can not function save on judicial days. And if to perform the given act it is required that the court be opened and a public session held, as there is a statute prohibiting this, the restriction is clearer and stronger.

It is of great importance in this connection to consider sections 388 and 389 of the Political Code of Puerto Rico, which read as follows:

"Sec. 388.—The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded.

14

"Sec. 389.—Whenever any act is appointed by law or contract to be performed upon a particular day, which day falls upon a holiday, such act may be performed upon the next business day with the same effect as if it had been performed upon the day appointed."

The intention of the Legislature regarding the operation and effect of legal holidays is clear. Only such official acts as are expressly authorized by law can be validly and effectively executed on such days; the others must be put off or postponed. Section 388 already mentioned gives validity to certain acts if executed on the following secular day, rendering them as effective as if they had been performed on the day set.

A problem arising from certain rulings made by some courts in the continental United States presents itself to our consideration. It has been held there that, even though a trial has been had on a holiday, if the accused did not make any protest or objection thereto, no reversible error can be urged on appeal on that ground. In some cases it has been declared that, although it is error for a court to be open and to transact business on a holiday, if such court did so inadvertently and the parties did not object, the judgment must be considered as having been entered on a legal or judicial day.

We know the jurisprudence of the States of the Union and its tendency to maintain, as has been done, that even though a trial be held on a holiday, if the parties do not object to such trial, thus waiving their right to so object, such waiver will operate as a bar to the avoidance of the proceedings.

In the instant case it was impossible for the judge to have inadvertently held the trial on a holiday. The proper authority, that is, the Legislature of Puerto Rico, had enacted a law of a general mandatory character prescribing that public offices shall be closed on the date therein specified, every year, and in effect prohibiting the transaction of any

official business on that day, which was expressly declared to be an official and legal holiday.

The question has been raised as to the existence of a waiver by the interested parties of any objection based on that law. We are of the opinion that there was no effective waiver.

Could attorney Bolívar Pagán waive expressly or tacitly the objections based on the lack of a proper summons and on the holding of the trial on a holiday?

We have already stated that the interested voters had not been personally summoned. The summons was served on the political parties, through the latter's representatives.

Attorney Bolívar Pagán testified that he had not been engaged by the interested parties in the said exclusion cases nor had agreed to defend them, except in the cases of Salvá, Maldonado, and some others. He stated that he had an interest in the cases as a member of the Insular Board of Elections and as a political leader, this being the reason for his intervention; he insisted that he had not been called upon or requested by the parties, and he made some comments on a certain situation which arose and on the reasons that induced him to intervene. The district court concluded that the evidence was weak and that, considered by itself, it was not the clear, convincing, strong and positive proof that was required in order to show that attorney Bolívar Pagán had not been retained by the interested parties.

In order that an attorney may represent a particular person and be entitled to act, demand, or waive anything in his behalf, it is necessary that the relation of attorney and client should exist between the attorney and such person. It has been constantly so held by the courts. Thus it is said that the contract of employment consists of a mere offer or request by the client and an acceptance or assent by the attorney; that there must be an actual contract or agreement, whether express or implied; and that the mere fact that one has acted as attorney for another does not, alone

and of itself, create the relation, although it affords a strong presumption of it. (See 6 C. J. 630–631, sec. 124.) Also that, in the absence of statutory requirement that the authority of an attorney shall be evidenced by writing, his position as an officer of the court makes it unnecessary for him, in the ordinary case, to show his authority in any way. To the same effect are the decisions of this court in *Claudio* v. *Palacios,* 29 P.R.R. 768; *Aparicio Bros.* v. *H. C. Christianson & Co.,* 23 P.R.R. 457, and *Franceschi* v. *Sepúlveda,* 27 P. R.R. 110, where the presumption of the authority to act is recognized.

In our jurisprudence the contract between the attorney and the client has a twofold aspect; as a hiring of services (which it is unnecessary to consider here in detail), and as a mandate. As in every contract, the relationship is created by the consent, the existence of the thing contracted for and the consideration. And the consent must appear from the fact of the offer and of the acceptance.

Neither in sections from 151 to 160 of the Compilation of 1911, nor in Act No. 38 of 1916, regulating the practice of the profession of law in Puerto Rico, do we find any specific provision defining the contractual relation between attorney and client. Now, it must be borne in mind that the decisions generally deal with cases in which the party in interest in the litigation denies that the attorney who appeared in his defense had been retained by him, and in such cases it is logical to require a stronger proof to overcome the presumption of authority. In the present case it is not the excluded voters who object, but the candidates who appeared to have been defeated. We do not think that the two situations are identical.

Certain facts may lead us to the essential truth, which on more than one occasion does not coincide with the procedural truth. Here an election was pending and, as it is natural, the participating voters were anxious to see their respective political parties win. People who engage in such

contests can not be expected to be always careful in the choice of means and methods; mistakes and hasty decisions are frequent in such cases. Thus, here the summoning of the interested voters was practically omitted, and it was perhaps believed that it was sufficient to serve notice on the local leaders of the political parties taking part in the election. Legally, this was not the procedure to be followed. The political leaders, and not the interested parties, conducted the litigation and intervened therein engaging attorneys and appearing in court. The irregular summoning was followed by the intervention, also irregular, of those who were so summoned. And the individuals really concerned, with rare exceptions, did not take an active part in the proceedings. The assertion made by the witness Bolívar Pagán to the effect that he intervened in his capacity as a member of the Insular Board of Elections is not borne out by the facts or sustained by any legal reason, since no delegation of authority at all appears, nor could he legally intervene in such a capacity. His statement that he intervened as a political leader logically is very probable. We are confronted by a reality which we can not disregard.

If Bolívar Pagán intervened, as testified by him without contradiction, in his capacity as a political leader or for any reason other than a direct mandate, whether express or implied, from the voters interested, he was not their attorney under a contract and therefore, they did not, either in an express and clear manner or impliedly, waive the objections to the jurisdiction or the improper conduct of the municipal court.

We do not attach importance to the fact that, two days thereafter, the said attorney appeared for all or some of the interested parties in a certiorari proceeding. The mandate for that purpose could have been obtained in the meantime. Besides, that is not the point now in controversy.

For the foregoing reasons, the judgment appealed from must be reversed, and the canvass made by the Insular Board

of Elections on December 12, 1928, of the election returns from the precinct of Humacao must be declared valid as to the award made by the said Board to the *"Socialista Constitucional"* Party of the 203 ballots or votes involved in this case, with the proper pronouncements as to the canvass certificate and the declaration of the result of the election.

Mr. Justice Aldrey, dissenting.

It is provided by the Election Law that the time for applying for the exclusion of persons appearing as voters on the voting lists of the Insular Board of Elections, shall be from January 1 to May 31, of each year in which a general election is to be held, and that the corresponding petitions for exclusion shall be decided by the Board not later than June 30 in each election year. Such decisions may be appealed from by filing a written notice of the appeal with the General Supervisor of Elections, who shall forward a certified copy of the record of the proceedings to the municipal court, to which the appeal shall have been taken, which is empowered to try the cases *de novo* and required to set one or more consecutive days for hearing such appeals, the hearings to be held not later than August 1 and the appeals themselves decided not later than August 15.

The Insular Board of Elections refused to exclude from the voting lists for the 1928 election 596 voters of the District of Humacao, and an appeal was taken from its decision in each case. The Municipal Court of Humacao set July 27 to hear 301 of the said appeals and July 28 to hear the remaining 295 cases. In 256 of the 596 appeals the municipal court rendered judgment ordering the exclusion of the voters, whose names were thereupon stricken out from the lists by the Insular Board by crossing the same with a red-ink line in each case and adding a note on the margin to the effect that the person had been excluded in pursuance of a judgment of the said court. In the remaining 340 cases the petitions were either withdrawn or dismissed. Out of the 256

voters·thus excluded, 203 voted at the election swearing that. they were entitled to vote, and their votes having been counted by the Insular Board in the canvass made by it, a certiorari proceeding was brought seeking to annul the action of the Board.· That proceeding was decided by the District Court of San Juan, sitting in bank, in favor of the petitioners, and thereupon the present appeal was taken.

The only case originating in the municipal court and presented in this .appeal, which is case No. 158 against Catalino García, appears to have been set for July 27 and the· judgment rendered on July 31. It also appears that case No. 311 against the voter Germán Figueroa García was set for July 28, but by stipulation of the parties it was heard on July 27. In spite of the fact that the hearings were set for different days, the parties stipulated that the said 256 cases were in the same condition as that of Catalino García, which had been set for July 27. In the prevailing opinion an arithmetical calculation is made to arrive at the conclusion that it was physically impossible to try so many cases within a period of two days; but the fact is that the cases were tried without any objection from the parties in the municipal court or any allegation or argument on this point by them, either in the certiorari proceedings in the district court or in this appeal. We know that to the number of cases set for the 27th were added, pursuant to agreement between the parties, other cases set for the 28th, and this is at variance with the idea that too many cases had been set for a single day. Perhaps some of the petitions were withdrawn, or perhaps some of the cases were heard in groups by reason of the similarity of the questions involved; as for instance, the cases of persons employed in the same factory, plantation or farm if such persons were challenged on the ground of nonresidence. It is a fact that the hearings were held.

It is true that the municipal court ordered the summoning of the political parties to appear at the hearing before it; also, that it does not appear from the record that the

defendants had been summoned. But it is also true that it is recited in each of the judgments rendered that attorney Bolívar Pagán appeared for the defendants, which recital could not be controverted in a collateral proceeding. It is likewise true that the attorney who appeared for the said voters in the municipal court testified in the certiorari proceeding that although he had defended them they had not authorized him to appear for them at the said hearings and that he did so appear because—he stated at times—he was a member of the Insular Board of Elections or—as he said at other times—because he had a political interest in those appeals. He could not have appeared in his capacity as a member of the Insular Board, since he failed to show any authority from the Board for that purpose; nor was the latter a necessary party to those appeals, as the controversy was between each registered voter and the person seeking such voter's exclusion. The only purpose of serving the notice of appeal on the Board is to inform the latter that its denial of the exclusion of a particular voter has been submitted to judicial determination. In ordinary actions the secretary of the court is also notified of an appeal, and yet such notice does not make him, nor the court whose order or judgment is appealed from, a party to the appeal. Nor did the political interest of the said attorney in the matter entitle him to intervene in those cases without leave of the court, which leave was not sought or granted. A more satisfactory and convincing proof than this would be necessary in order to overcome the presumption that the defendants had authorized the attorney to represent and defend them, arising from the recital in the judgment. The district judges who heard the testimony of attorney Bolívar Pagán considered that the evidence offered on this point was weak and did not constitute of itself the clear, convincing, strong and positive proof required in order to show that he had not appeared as the duly authorized attorney of the defendants; and the judges did not take such evidence into account in rendering their

judgment, as otherwise they would have made a different decision. In *Succession of Lluveras* v. *Sepúlveda*, 20 P.R.R. 279, 281, citation is made with approval of the case of *San Francisco Savings Union* v. *Long*, 123 Cal. 107, 113, in which the Supreme Court of California, speaking through Mr. Justice Temple, said:

"It is always presumed, until the contrary appears, that an attorney is duly authorized to appear for and represent any parties for whom he assumes to act. This confidence, which underlies all judicial action in this country, rests not only upon a belief in the honor and integrity of the attorney, but upon the fact he is a sworn officer of the court. There can scarcely be a more gross violation of the duty of an attorney than knowingly and willfully to appear for and represent a party to an action without authority. And it is especially so if the person for whom the unauthorized appearance is made has not been served and does not know that an attempt is being made to obtain a judgment against him . . ."

In view of the foregoing; of the fact that none of the voters has disclaimed the appearance of the attorney in his behalf; that the judgments, in which it is recited that he appeared in behalf of the defendants, can not be collaterally attacked, as attempted herein; that some of the defendants were present at the hearings and that two days later the said attorney filed a petition in certiorari on behalf of those defendants, although he now says that he was not authorized by them to so appear, I conclude, as did the lower court, that the said attorney represented the defendants at the said hearings before the municipal court. Otherwise, I should have to conclude that he assumed to act in pursuance of an authority which was not granted him. Even though the defendants were not notified and summoned to appear at the hearings, their appearance by counsel made a summons to them unnecessary and supplied the omission.

Let us consider now the question of the 27th of July being a holiday, on which day some of those hearings were held.

Section 387 of the Political Code, enacted in 1902, provides as follows:

"Holidays, within the meaning of this code, are every Sunday, the first day of January, the twenty-second day of February, the twenty-second day of March, Good Friday, the thirtieth day of May, the fourth day of July, the twenty-fifth day of July, the first Monday of September, to be known as Labor Day, the twenty-fifth day of December, every day on which an election is held throughout the island and every day appointed by the President of the United States, by the Governor of Porto Rico or by the Legislative Assembly, for a public fast, thanksgiving, or holiday. When any such day falls upon a Sunday, the Monday following is a holiday."

In connection with the foregoing provisions it is prescribed by section 388 of the same code that the time in which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last day is a holiday, and then it is also excluded. Subsequently, in 1904, it was provided by the Code of Civil Procedure as follows:

"Sec. 10.—The courts of justice may be held and judicial business be transacted on any day, except as provided in the next section.

"Sec. 11.—No court can be opened, nor can any judicial business be transacted on Sunday, on the first day of January, on the fourth day of July, on Christmas or Thanksgiving day, or on a day on which the general election is held, except for the following reasons:

"1. To give, upon their request, instructions to a jury when deliberating on their verdict.

"3. To receive a verdict, or discharge a jury.

"3. For the exercise of the powers of a magistrate in a criminal action, or in a proceeding of a criminal nature: *Provided*, That in civil causes orders of arrest may be made and executed; writs of attachment, executions, injunctions and writs of prohibition may be issued and served; proceedings to recover possession of personal property may be had; and suits for obtaining any such writs and proceedings may be instituted on any day."

Afterwards the Legislature, by Joint Resolution No. 45, approved July 24, 1923, designated the 27th day of July of

1923 and of each subsequent year an official and legal holiday, and directed that during such day all public offices of Puerto Rico, both insular and municipal, should remain closed.

Sunday is in its nature a holiday and a day of rest throughout the Christian world ever since the time of Emperor Constantine, while other days are holidays by virtue of some legislative enactment or executive proclamation. Regarding holidays which are not Sundays, there is great conflict in the decisions of the courts in the United States as to whether such holidays are *dies non juridicus,* that is, whether courts can function on such days unless expressly authorized to do so. Thus it was held in *State* v. *Soper,* 148 Mo. 217, cited in 10 L.R.A. (N. S.) 791, first note, that in the absence of a statute containing a mandatory provision forbidding the judges of courts to hear and determine matters on a legal holiday, a judicial proceeding upon that day is not void; and in *Web* v. *State,* (Tex. Crim. App.) 40 S. W. 989, also cited in the said Reports, it was held that an indictment presented on the 22nd day of February was not void, although the statute provided that that day should be a legal holiday and that all public offices should be closed. In *People* v. *Díaz,* 33 P.R.R. 478, this court, citing *Richardson et al.* v. *Goddard et al.,* 64 U. S. 43, and 29 C. J. 763, held that certain proceedings for the impaneling of a jury were not void because held on a day on which the Governor had proclaimed the closing of all public departments and offices and the cessation of all public work and business, on the ground that the power of the Governor does not extend to changing the days on which, according to law, the courts can not transact business; and that his proclamation was only a recommendation. There are many other similar cases which we will not cite now for reasons which will appear hereafter in this opinion.

In view of the fact that the holidays established by the Political Code are such holidays within the purview of that

Code, which does not deal with courts of justice; that the Code of Civil Procedure was enacted subsequent to the Political Code; that the former only designates as *dies non juridicus* six out of the many days established by the Political Code as holidays; and in view of the divergent rulings of the courts in the continental United States, I have had many doubts as to whether the 27th of July is a *dies non juridicus*. But as I have been unable to arrive independently at a final conclusion on this point, I will accept the view entertained by the other members of this court on this question, namely, that the said day is nonjudicial; considering also that it does not seem reasonable to me that there should be legal holidays to be observed as such by some branch of the government and not by the others.

Notwithstanding the foregoing, it is my opinion that the exclusion judgments rendered by the Municipal Court of Humacao and which gave rise to the present appeal should not be set aside, for the following reasons.

It would seem that the mere fact that the day on which a judicial proceeding is held is a holiday does not render such proceeding void, and there are several decisions to that effect as regards the Fourth of July, Saturday afternoon and Labor Day. But I need not dwell upon this question now, because my point of view is that the defendants having failed, through their attorney, to object in the municipal court to the cases being heard on July 27, they can not now contend that such hearings were void. In 25 R.C.L. 1447, it is stated that in a criminal case the accused may be concluded by his failure to object to proceedings being conducted on a legal holiday, citing the cases of *State* v. *Duncan,* 118 La. 702, 10 L.R.A. (N. S.) 791, and that of *Michel* v. *Boxholm,* 128 Ia. 706, 5 Ann. Cases 918; and in 29 C. J. 766 it is said, citing the case of *State* v. *Whitman, County Supr. Ct.,* 49 Wash. 1, 17 L.R.A. (N. S.) 257, that where the court, although prohibited from transacting judicial business on a legal holiday, conducts a trial without objection, the case

will not be reversed on appeal, although it is error for a court to hold a trial on such holiday.

The case of *State* v. *Duncan, supra,* dealt with a conviction on a holiday for murder and the court held that the conviction was not void, as the trial was held without any objection on the part of the accused, citing 1 Bishop Crim. Law, par. 996; *State* v. *Rose,* 114 La. 1062, 38 So. 858; *State* v. *Jackson,* 3 La. Ann. 96; *State* v. *White,* 52 La. Ann. 206, and *State* v. *Arbuno,* 105 La. 730, and the decisions therein cited.

In the *Duncan* case mention is made of *In re Bonerman* and in the dissenting opinion rendered therein that question was not considered.

Also, in *State* v. *Whitman County, etc., supra,* some of the evidence was heard on a holiday and the court refused to set aside the judgment, saying:

"Unquestionably it would be erroneous for a court to remain open and transact judicial business on a legal holiday; and we assume that no trial judge in this state would knowingly do so. If, for any cause, one should unwittingly do so, no objection being interposed by parties present, and a judgment should thereafter be entered on a judicial day, this court most certainly would not declare such judgment void on the complaint of a consenting litigant who objects for the first time upon appeal or by writ of certiorari. Although we have found no case identical with this, the above principles have been substantially recognized by other courts, and also, by this court."

In that case the following decisions are cited in support of the ruling made: the *Duncan* case, *supra; Ehrlisch* v. *Pike,* 53 Misc. 328, 104 N. Y. Sup. 818; *Houston, etc., R'y Co.* v. *Harding,* 63 Tex. 162; *Bardley* v. *Claudon,* 45 Ill. App. 326; *Latta* v. *Electric Co.,* 146 N. C. 285, and others. In *Houston, etc., R'y. Co., supra,* it was held that a legal holiday is not necessarily a *dies non juridicus;* that the fact that evidence had been received by the court below on the 1st of January did not render its judgment void, and that even if

it was the privilege of the appellant to be exempt from having his cause considered on that day, he should have claimed it before the trial occurred, or at least made a motion to set aside the proceedings after the judgment was rendered; and that it was too late, under the circumstances, to take the objection for the first time on appeal. In *People* v. *Maljan,* 34 Cal. A. 384, it was held that if it was error to hold the trial on a holiday the defendant could not be heard on appeal to complain of this, as his attorney in open court had waived the objection; and the appellate court cited several cases from the same jurisdiction. I have been unable to find any decision dealing with this question wherein a contrary ruling has been made.

In my opinion the rule laid down by those decisions is just and should be followed by us, as it is not reasonable that a person should appear without objection at a trial held on a legal holiday and, if his hopes are frustrated, allowed to urge thereafter on appeal or certiorari that the proceedings in the court below were void because they were had on a holiday. In the case at bar it does not appear from the record, nor is it anywhere stated, that any objection was made on that ground. There are many acts which are performed contrary to the provisions of particular statutes but which are, nevertheless, validated for want of timely objection.

I will add that in this, as in similar cases, the court must have acted inadvertently, since it would not seem logical to suppose that either the court or counsel desired to work on a holiday. In only one of the cited cases mention is made of inadvertence in the holding of the trial on a holiday, but the others are confined to the naked fact of the trial having been held on a holiday.

In conclusion, as attorney Bolívar Pagán has not shown that his appearance in the exclusion cases to which the certiorari herein refers was not made for the defendants, and he having failed to make timely objection to the hearing of those

cases on July 27, which was a holiday, I am of the opinion that the judgments in question are not void and that the decision appealed from should be affirmed.